The People ex rel. JAMES A. WRIGHT, Appellant, v.
ALFRED C. CHAPIN, Comptroller, etc., Respondent.

The provision of the act of 1855, " in relation to the collection of taxes
on lands of non-residents " (§ 83, chap. 427, Laws of 1855), which
authorizes the State comptroller where he shall discover that a sale of
land for taxes was invalid or ineffectual to give title to the lands sold,
to cancel the sale and refund the purchase-money, was intended to
relieve the purchaser from the consequences of a defective tax title;
the owner of the land is not properly a party to the proceedings; nor is
he permitted in this way to test the validity of the sale.

Where, therefore, the owner of lands sold for taxes presented his petition
to the comptroller, asking that the sale be canceled in pursuance of the
authority conferred upon the comptroller by said act, and that officer
denied the prayer of the petition.    Held, that no right of the petitioner
was finally determined, nor was he a person aggrieved by the decision,
within the meaning of the provisions of the Code of Civil Procedure
(§§ 2122, 2127), regulating the review by certiorari of the determina-
tion of a body or officer; and so, that he had no right to a review of
the determination of the comptroller.

It seems that neither the act of 1873 (Chap. 120, Laws of 1873), nor that of
1885 (Chap. 448, Laws of 1885), give to the comptroller any new power
in this respect; that while the owner may, the same as any other person,

put the comptroller in the way to discover errors in the sale, he cannot compel an investigation, or if one is had, review the comptroller's decision.

(Argued February 21, 1886; decided March 21, 1886.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department entered upon an order made December 2, 1883, which affirmed the determination and proceedings of the comptroller of the State, upon an application to him to cancel a sale of lands of the relator for unpaid taxes.

The material facts are stated in the opinion.

*W. B. Van Rensselaer* for appellant.

*Charles F. Tabor* for respondent.

DANFORTH, J. The appellant, as owner of lands in the town of Morehouse, presented his petition to the comptroller of the State, asking that a sale of those lands in 1877, for the unpaid taxes of 1876, be canceled, and that any conveyance by virtue thereof be set aside and discharged of record. After hearing the evidence submitted to him, the comptroller denied the prayer of the petitioner, and upon review, his determination has been affirmed by the Supreme Court.

We do not see that any right of the appellant was finally determined by the comptroller, nor that he is a person aggrieved by the decision in question, and unless one or the other of these relations exist, he has no right to a review of the proceedings in which that determination was made (Code Civ. Pro., § 2122, subd. 1, § 2127). The application to the comptroller was not warranted by the statute referred to by the learned counsel for the appellant, and on which alone he relies (Laws of 1855, chap. 427). Section 83 of that act declares that " whenever the comptroller shall discover, prior to the conveyance of any lands sold for taxes, that the sale was for any cause whatever invalid or ineffectual to give title to the lands sold, the lands so improperly sold shall not be conveyed, but the comptroller shall cancel the sale, and forth-

with cause the purchase-money and interest thereon to be refunded out of the State treasury to the purchaser, his representatives, or assigns." Section 84, that "If the error originated with the county or town officers, the sum so paid shall be a charge against the county from which the tax was returned; and the board of supervisors shall cause the same to be assessed, levied, collected and paid to the treasurer of this State." And section 85 provides, "If the discovery that the sale was invalid shall not be made until after the conveyance shall have been executed for the lands sold, it shall be the duty of the comptroller, on receiving evidence thereof, to cancel the sale, to refund out of the State treasury to the purchaser, his representatives or assigns, the purchase-money, and interest thereon, and to recharge the county from .which the tax was returned, with the amount of purchase-money, and interest at the rate of seven per cent. from the time of the sale, and such county shall cause the same to be levied and paid, as provided in the last preceding section."

The evident object of these provisions was to enable the State to relieve the purchaser from the consequences of a defective tax title, and at the same time replenish its treasury by a speedy collection of the tax withheld from it. The owner of the land is not a party to the proceeding, nor is he permitted in this way to test the validity of the sale or tax. In such a controversy the purchaser would have an interest and a right to its protection in the courts, by the usual course of legal proceedings. The statute contains no intimation of a legislative purpose to deprive him of that right. It gives no process to bring him in, confers no power to compel witnesses. In short it creates no court, provides for a single transaction to which the comptroller and the purchaser are the only parties. By it the State voluntarily assumes a liability to refund money received on a sale where the tax proceedings have not been in accordance with the statute, and are invalid, thus subjecting itself to a just rule of responsibility, applied without a statute to inferior municipalities, (*Chapman* v. *City of Brooklyn*, 40 N. Y. 372), and no doubt

binds the purchaser to submit to the determination of that officer, for the purchase was made subject to the provisions of the statute which provided for his decision. We think it goes no further. The purchaser does not complain. The appellant cannot. It is unnecessary, therefore, to consider the case upon its merits, but for the reason above stated we think the appeal should be dismissed, with costs.

All concur.

Appeal dismissed.

On a subsequent motion for reargument the following opinion was handed down.

DANFORTH, J. On November 11, 1884, the relator by petition represented to the comptroller that in December, 1871, he became sole owner of certain lots of land, numbered eighteen, twenty and thirty-four, in the north half of Arthurboro patent, in the town of Morehouse, Hamilton county; that in 1877, they were sold for the taxes of 1870, and numbers eighteen and twenty conveyed to Ballow, and lot thirty-four to Peck; that the sale was void because, "*first,* the corrected assessment-roll for the town of Morehouse (being the township in which said lots are situated) for the year 1870, as delivered by the supervisor of the town of Morehouse to the town clerk thereof, is incomplete and defective, because (*a*) there is no oath of the assessors on said assessment-roll or attached thereto; (*b*) that these lots belong to non-residents, and that the number of acres of each lot is not given; (*c*) that the values of the above lots are not given; (*d*) that there is no fifth column at all; (*e*) that there are no figures set down to show the respective sums, in dollars and cents, to be paid as a tax on said lots. (1 R. S. 395, §§ 33, 35.) *Second.* That it does not appear from any statement in the collector's return and affidavit thereto, or the county treasurer's certificate, that the taxes for the year 1870, remaining unpaid were assessed upon the lands of non-residents," and prayed, therefore, that in pursuance of the authority conferred upon the comptroller by section 85 of chapter 427 of the Laws of the State of New

1887.]          People ex rel. Wright v. Chapin.          373

Opinion of the Court, per Danforth, J.

York, passed in the year 1855, that the tax sale of 1877, so far as the same relates to lots numbered eighteen, twenty and thirty-four, in the north half of the Arthurboro patent, in Hamilton county and State of New York, be canceled, and that any conveyance delivered by virtue of said sale of the said lots be set aside and discharged of record.

The comptroller, after hearing, denied the application. The relator by *certiorari* sought to review that decision. Upon return made, the Supreme Court affirmed it. The relator appealed to this court. Upon the argument the learned counsel for the relator repeated upon his points the statement of the petitioner that " the application made by the relator on November 11, 1884, to the comptroller to cancel such tax sale was made under the authority of sections 83, 84 and 85 of chapter 427 of the Session Laws of 1855," and in reply thereto the learned attorney-general, for the respondent, submitted as a distinct proposition that there is no statute authority for the demand made by the relator upon the comptroller to cancel the sale; that the sections above named and cited by the appellant were enacted for the benefit only of purchasers who had paid their money on the strength of the title of the State, and gave no right to an owner of the lots either to make the demand that the comptroller cancel the sale, or, upon his refusal, to review that determination. This position was not answered by the relator upon any authority, nor other statute than that of 1855 (*supra*). We sustained the view of the attorney-general and, without passing upon the merits, dismissed the appeal (March 2, 1886). A motion for a reargument is now made by the relator upon affidavit of his counsel, showing that the point made by the attorney-general as to the limitation of the statute of 1855, was not taken in the Supreme Court, nor anticipated by the relator as one which might be made in this court, and therefore that he failed to cite decisions and statutes bearing upon, if not controlling the question, viz.: Laws of 1873 (chap. 120); Laws of 1885 (chap 448); *Clark* v. *Davenport* (95 N. Y. 477).

The beginning of this remedial legislation may be found

in chapter 262 of the Laws of 1823, which enacted (§ 52) "that if the comptroller shall discover at any time before he conveys lands sold for taxes that the sale was, for any cause whatever, improper, he shall not convey the land so improperly sold but shall pay the purchasers of such lands the sum which they would be entitled to, if such land had been regularly redeemed by the owner, and the sum so to be paid shall be a charge against the county from which the return of the tax was made if the cause why such sale was improper originated with the county."

By 1 Revised Statutes (p. 413, § 89), this provision was re-enacted so as to read, " Whenever the comptroller shall discover, prior to the conveyance of any lands sold for taxes, that the sale was, for any cause whatever, invalid and ineffectual to give title to the lands sold, he shall not convey the lands so improperly sold, but shall forthwith cause the purchase-money, and interest thereon, to be refunded out of the treasury to the purchaser, his representatives or assigns."

And by section ninety-one it was provided that " if the discovery that the sale was invalid shall not be made until after a conveyance shall have been executed by the comptroller for the lands sold, it shall be the duty of the comptroller, on receiving satisfactory evidence thereof, to refund out of the treasury, to the purchaser, his representatives or assigns, the purchase-money and interest thereon; and to recharge the county from which the tax was returned with the amount of tax and interest, at the rate of seven per cent from the time interest was charged thereon by him, and such county shall cause the same to be levied and paid, as provided in the last section."

It is obvious that these provisions concern no one but the purchaser, the State, and the county or town from which the tax was returned. The act of 1850 (Chap. 298, §§ 102, 104), contains the same provisions, with slight verbal alterations, among others directing that after such discovery the comptroller shall cancel the sale. This was evidently for no other purpose than to preserve the regularity of the proceedings

in the refunding and recharging process, and concerned only the State on one side and the town or county, as the case might be, on the other.

These provisions reappear in 1855 as sections 83 and 85. (Laws of 1855, chap. 427). It should be noticed that in no case is the comptroller authorized to recall a conveyance made by him, nor by his decision avoid or cancel it, except as the cancellation of the sale might, by vitiating the precedent steps, destroy the regularity of the proceedings. The cancellation of the sale affected the purchaser by impairing his title in one case and in another restored the purchase-price of an ineffectual grant; it affected the town. or county by compelling it to bear the burden of retaxation. The power to cancel might be exercised upon misapprehension or misinformation, and, perhaps, for that reason it was enacted in 1873 (Laws of 1873, chap. 120), that the comptroller should have power to set aside any cancellation of sale made by him under the act of 1855 (*supra*), in either of three cases: "*First.* Whenever such cancellation was procured by fraud or misrepresentation. *Second.* Whenever such cancellation was procured by the suppression of any material fact bearing upon the case. *Third.* Whenever the cancellation was made under a mistake of fact." This, also, could concern only the rights or interests of the same parties.

The act of 1885 (Laws of 1885, chap. 448) can have no direct application to the case at bar, for it was enacted after these proceedings were commenced, and after the decision of the comptroller. The statute also limits its operation by declaring that it shall not affect a proceeding pending at the time of its passage. It amends section 65 of the act of 1855 (*supra*) by giving conclusive effect to the comptroller's conveyances after a specified time, but declares that "such conveyances and certificates, and the taxes and tax sales on which they are based, shall be subject to cancellation, as now provided by law, on a direct appplication to the comptroller, or an action brought before a competent court therefor, by reason of the legal payment of such taxes, or by reason of

the levying of such taxes by a town or ward having no legal right to assess the land on which they are laid."

Neither its validity nor construction is before us except as it may bear by implication upon the power and duty of the comptroller, under the act of 1855. It gives no new power. The comptroller had been given none to cancel conveyances, neither his own deed, nor that of a remote grantor. He might cancel a tax sale. The court in a proper case had power to do that also, and such other acts as were essential to the protection of those affected by them, whether an owner, or mortgagee, or one otherwise interested. The statutory power of the comptroller, when exercised, is for the benefit of the purchaser, and, for reasons briefly stated in my opinion on the first argument, cannot be invoked in any legal sense by the owner. He may, indeed, as might any other person, put the comptroller in the way to "discover" errors in the sale, but he cannot compel an investigation, nor if one is had, review his decision.

In *Clark* v. *Davenport* (95 N. Y. 477), the learned judge, in denying the right of the appellant to the relief sought, referred incidentally to the statute of 1855, as giving a remedy in certain cases by the action of the comptroller under sections 83, 85 (*supra*), and says "no reason appears why the proceedings might not be reviewed by *certiorari*, or an application made by mandamus to compel him to do so," *i. e.*, to set aside the sale by reason of the irregularity and invalidity in imposing the taxes for which the sale was made." We were not there called upon to interpret the statute, and the remark made was suggestive merely, and not the resolution of the court upon any point to be determined, nor a direct opinion even of the learned judge by whom it was written, but rather a side blow put by way of argument. It was not necessary to the judgment rendered, nor was it put forth as ground or reason for it.

The office of comptroller was created, and his powers and duties are defined by statute. As between the purchaser at a tax sale and the State, under whose authority he acted, he

may decide the questions of regularity relating thereto. He has no judicial power to determine a controversy between other parties, but to "discover" a fact, which, when found, is to determine his own conduct. (*People ex rel. Demarest v. Fairchild*, 67 N. Y. 334.)

Looking at the case, therefore, in the light of the argument for a rehearing, we find no reason for a decision differing from that before made.

The motion for a reargument should be denied, with costs.

All concur.

Motion denied.