. GEORGE W. OSTRANDER AND OTHERS, APPELLANTS *v.* ERASTUS DARLING, RESPONDENT.

*Cancellation of a tax sale by the comptroller — invalidity of, as against the purchaser at such sale, where it is canceled without notice to him.*

The power of the comptroller of the State of New York to cancel a tax sale was given with a view of relieving the purchaser at such sale from a defective title, and of restoring the purchase-money, paid at the sale, to him.

When such purchaser insists upon the validity of the tax sale, and of his deed under it, for which he has parted with his money, the Constitution protects him against an adjudication adverse to his right thereunder, unless such adjudication is made in due process of law, an essential element of which is that the purchaser shall have notice, actual or constructive, according to some antecedent provision of law, of the proceedings being taken, so that he may be heard in defense of his rights before being deprived of them.

The cancellation of a tax sale by the comptroller, without such notice to the purchaser, while it may conclude the State as to the matter decided, does not bind or conclude the purchaser at the sale, who has no notice thereof, and who does not accept the benefit of the cancellation.

APPEAL by the plaintiffs from a judgment rendered at the Fulton Circuit, on a trial before the court, which was entered in the office of the clerk of that county on the 22d day of December, 1888.

*Arthur L. Andrews*, for the appellants.

*John M. Carroll*, for the respondent.

LANDON, J. :

This action is to recover for logs and bark which the defendant cut upon and carried away from lot No. 20, Ox Bow Tract, Hamilton county. The only question in issue was whether the plaintiffs or defendant had the better title.

In 1842 the State, by its surveyor-general, and in pursuance of the statute, gave a certificate of sale of the lot to Andrew K. Morehouse, he then paying twenty-five per centum of the agreed price and giving his bond for the balance, payable with interest in six equal annual payments. This transaction gave him the right of possession of the lands, and, upon payment of his bond, the right to a deed or patent from the State. The State had the right to tax the lot, and upon default upon the bond to resell the lot. The lot was then unoccupied, and has never since been occupied or enclosed. There is evidence tending to show that Morehouse made default upon his bond, and that the State thereupon resold the lot in 1847 to one Bickford, and that ,in the same year one Elliot redeemed the lot and paid the State in full. Whether Elliot redeemed for Morehouse does not appear, but as a stranger could not redeem, we presume that he so far acted for Morehouse that the latter could ratify his action. It also appears that, as late as 1856, Morehouse redeemed the lot from tax sales made by the county treasurer. We assume, therefore, that in 1856 Morehouse could have obtained his deed or patent from the State. He lived until 1882, but never obtained any patent. In 1884, Josephine Winchell, his daughter, and as his heir, did obtain a patent therefor, and the plaintiffs now have whatever title, if any, she thus obtained. We assume, upon an examination of the statutes, this title to be good, unless the one produced by the defendant is better.

The defendant read in evidence a deed of the lot in question from the comptroller of the State to the people of the State, dated March 11, 1862. It recites that, in November, 1859, the lot was sold at public auction by the comptroller to the said people, for taxes unpaid for more than two years. It contains recitals that the statute had been complied with. The defendant also read in evidence a deed or patent from the State to Patrick N. Crowe, dated August, 1870, of

the lot in question. This deed recites that the title of the State was by virtue of the tax sale and deed aforesaid. This deed was recorded in the secretary of state's office August 4, 1870, and in the clerk's office of Hamilton County November 30, 1883. The defendant claims under Patrick N. Crowe, and, if his title is good, the defense is established.

Under chapter 427, Laws of 1855, section 65, the comptroller's deed was presumptive evidence that the " sale, and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed to redeem, were regular," etc. The tax title could not be successfully assailed in any court, except upon showing some material omission of the requirements of the statute. *Wood* v. *Knapp* (100 N. Y,, 109).

By chapter 448, Laws of 1885, section 65 aforesaid was amended by making the comptroller's deed and the deed of his grantee, after having been recorded two years in the proper clerk's office, and after December 9, 1885, conclusive evidence of the facts aforesaid. (*People* v. *Turner*, 49 Hun, 466.)

The deed to Crowe had been recorded in the proper clerk's office more than two years prior to December 9, 1885. The deed to Crowe, therefore, constituted a perfect title, unless the facts now to be noticed overreached and destroyed it.

In May, 1884, the plaintiff Ostrander applied to the comptroller to cancel the tax sale of 1859, and evidence is presented tending to show that, in August, 1884, the comptroller did cancel it. This evidence was not satisfactory to the trial judge, and he refused to find that the cancellation was made. We have examined the evidence, and we think it shows the cancellation was made. It was procured to be made for the benefit of the plaintiffs, and without disclosure to the comptroller of the rights of Crowe. Ostrander obviously sought, by such cancellation, to defeat Crowe's rights, and he now insists that he succeeded in doing it. Crowe had no notice and no opportunity to be heard. The object of the statute authorizing the comptroller to cancel a tax sale is to relieve the purchaser from a defective title, and restore the purchase-money to him. (*People ex rel. Wright* v. *Chapin* 104 N. Y., 369; *People ex rel. Ostrander* v. *Chapin*, 105 id., 309.)

The proceeding assumes the purchaser's consent, which is usually manifested by his receipt for the purchase-money. It would seem that when the purchaser insists upon the validity of the tax sale and of his deed under it, for which he has parted with his money, the Constitution protects him against an adverse adjudication unless the same is made in due process of law, an essential element of which is that he shall have notice, actual· or constructive, according to some antecedent provision of law, that he may be heard in defense of his rights before being deprived of them. The fact that no such notice is provided for by this statute or by chapter 120, Laws of 1873, which authorizes the comptroller to set aside such cancellation, whenever procured by fraud, mistake, misrepresentation or suppression of material facts, would appear to be conclusive that in no case is the power to be used to overreach or subvert the purchaser's title to his prejudice. There is nothing in the latter act authorizing the purchaser to institute any proceeding before the comptroller to set aside the cancellation. Yet, if there were, it would simply imply that Crowe may hereafter have his rights determined by due process of law, and also imply that as yet it has not been done. The defect alleged in this case was that the notice to redeem as published was not such as the statute prescribed. A defective printed notice was produced from the comptroller's office, but whether no proper notice was duly published was not otherwise established. If the law had provided that Crowe might have been heard, possibly he would have appeared and produced the proper proofs. Possibly, if he had been permitted to allege that the proof produced did not show publication of an imperfect notice, the comptroller would have decided in his favor. But, assuming that the comptroller had the right to cancel the sale, his order binds the State, but, according to elementary rules, cannot bind persons not parties, or not coming in and accepting the benefits of the order.

We do not think the order bound Crowe, and hence his title was not affected by it.

Judgment affirmed, with costs.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment affirmed, with costs.