George W. Ostrander et al., Appellants, *v.* Erastus Darling, Respondent.

The provisions of the statute, making it the duty of the state comptroller, " on receiving evidence " that a sale of land for taxes was invalid or ineffectual to give title to the land sold, " to cancel the sale " and refund to the purchaser, his representatives or assigns the purchase-money (§§ 83, 85, chap. 427, Laws of 1855), were enacted for the benefit of the purchaser, and he, not the owner of the land, is the proper party to the proceeding.

Where, therefore, the comptroller, on application of the owner, without notice to the purchaser or his assigns or knowledge on his part, entered a sale as "canceled," *held*, that the attempted cancellation was inoperative and void, and the interest of the holder under the tax sale was not affected thereby.

The ground for the attempted cancellation was that the land was "not properly advertised for redemption." The only evidence to sustain it was that of a clerk in the comptroller's office, who produced a book containing printed notices, purporting to have been cut from newspapers, pasted therein, among them notes of the sale of the land in question, and that it remained unredeemed, also stating the amount required to redeem, and the time for redemption. There were no affidavits of the publishers of the newspapers in reference to the length of time the notices were published, or certificates or proof attached that they were the notices published. The clerk testified that he had no personal knowledge that these notices were published, or of the contents of the papers, and that correct notices might have been published for all that he knew. The land in question was uncultivated and unoccupied. *Held*, that the proof was insufficient to overcome the statutory presumption attached to the comptroller's deed of the regularity of the sale and of all "notices

required by law to be given previous to the expiration of the two years allowed by law to redeem " (§ 65, chap. 427, Laws of 1855, as amended by chap. 448, Laws of 1885).

The provision of the statute enacting this presumption is not in conflict with any constitutional provision.

Reported below, 53 Hun, 190.

(Argued April 8, 1891; decided May 1, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department entered upon an order made May 7, 1889, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Arthur L. Andrews* for appellant. The plaintiffs show a good title to the land in question, and are, therefore, entitled to maintain this action to recover for the timber cut therefrom. (*Allen* v. *Comrs., etc.,* 38 N. Y. 315 ; 1 R. S. 20, art. 3, § 18 ; *People* v. *Hagadorn,* 104 N. Y. 516 ; *Johnson* v. *Elwood,* 53 id. 433.) The defendant's title is inferior to that of plaintiffs. (*Acer* v. *Westcott,* 46 N. Y. 384 ; *H. Ins. Co.* v. *Halsey,* 4 Seld. 271, 274 ; *Gilbert* v. *Peteler,* 38 N. Y. 166 ; *Esterbrook* v. *Savage,* 21 Hun, 145 ; Gerard on Titles [3d ed.], 539 ; *Torrey* v. *Bank,* 9 Paige, 649 ; *Demeyer* v. *Legg,* 18 Barb. 14 ; 1 R. S. 388, § 4.) The 1859 tax sale is illegal and void by reason of defective advertisement of the notice to redeem. (*Becker* v. *Holdridge,* 47 How. Pr. 429 ; *Simonton* v. *Hays,* 32 Hun, 286 ; *People* v. *Van Rensselar,* 9 N. Y. 291 ; *People* v. *Schemerhorn,* 19 Barb. 540.) The Crowe title was destroyed by the cancellation of the 1859 tax sale. (Laws of 1855, chap. 427, §§ 80, 85 ; *People ex rel.* v. *Chapin,* 105 N. Y. 309 ; *People ex rel* v. *Chapin,* 104 id. 369 ; Blackwell on Tax. Tit. 51, 66, 302 ; *Denning* v. *Smith,* 3 Johns. Ch. 344 ; Cooley on Taxn. 476, 553 ; *In re W. S. A. P. R. R. Co.,* 115 N. Y. 442, 447 ; *Easton* v. *Pickersgill,* 55 id. 310, 315 ; *People* v. *Dayton,* Id. 367.) It is urged on behalf of the defendant, that conceding the plaintiffs' claim as to the invalidity of the title attempted to be conveyed

by the patent to Crowe, the plaintiffs cannot attack it in this action. This position is untenable. (Code Civ. Pro. §§ 1207, 3339; Abb. Tr. Ev. 705, § 17; *Murray* v. *Walker*, 31 N. Y. 399; *Stoddard* v. *Chambers*, 2 How. [U. S.] 283, 317; *Easton* v. *Salsbury*, 62 U. S. 426; *Sherman* v. *Buick*, 93 id. 209, 216; *People* v. *Van Rensselaer*, 9 N. Y. 291, 320.) The certificate issued to Morehouse in 1842 was, to all intents and purposes, a state grant, or at least that it became so in 1847 when the terms of sale were fully complied with, and that the patent issued to Josephine Winchell relates back to that certificate. (*Jackson* v. *Ball*, 1 Johns. Cas. 81; *Heath* v. *Ross*, 12 id. 140; *Jackson* v. *Dickinson*, 15 id. 309; *Jackson* v. *Ramsay*, 3 Cow. 75; *Judd* v. *Seekins*, 62 N. Y. 266; *Shipley* v. *Cowen*, 91 U. S. 330.) Crowe is not a *bona fide* purchaser. (*Oliver* v. *Pratt*, 44 U. S. 333; *May* v. *LeClaire*, 78 id. 217; *Sherwood* v. *Moelle*, 1 La. Ann. 797; *Snowden* v. *Tyler*, 21 Neb. 199.) Plaintiffs are not estopped from attacking the tax sale, or defendant's title based thereon. (*Sparrow* v. *Kingman*, 1 N. Y. 242; *Douglas* v. *Cruger*, 80 id. 15, 20.)

*John M. Carroll* for respondent. The sale of the lot in question for taxes was a valid and effectual sale. (1 R. S. 338, § 6; 2 id. [7th ed.] 982, § 6; Laws of 1855, chap. 427, §§ 61, 65; *Wood* v. *Knapp*, 100 N. Y. 109–112; Laws of 1885, chap. 448; *People* v. *Turner*, 49 Hun, 466; 117 N. Y. 227; *Williams* v. *E. I. Co.*, 3 East, 192.) The tax sale of the lot in question was not canceled or set aside by a judicial determination of the comptroller binding upon the defendant and upon Crowe, his grantor. (Laws of 1855, chap. 427, § 85; 2 R. S. [7th ed.] 1032, § 85; *People ex rel* v. *Warden*, 100 N. Y. 20; *Putnam* v. *Van Allen*, 46 Hun, 484, 492, 493; *Adams* v. *Nellis*, 49 How. Pr. 385–388; *Smith* v. *Paulding*, 3 Robt. 615–618; *Snyder* v. *Beyer*, 3 E. D. Smith, 235–242; *Bloom* v. *Burdict*, 1 Hill, 130; *In re Budlong*, 100 N. Y. 203; *Stewart* v. *Palmer*, 74 id. 183; 1 Greenl. on Ev. §§ 522, 523; Broom's Legal Maxims, 736; *People* v. *Tallman*, 36 Barb. 222, 224, 225; *Rathbone* v. *Miller*, 6 Johns. 282; *In re Comrs. of High-*

*ways*, 15 id. 537, 538 ; *Jordan* v. *Hyath*, 3 Barb. 275, 282, 283, 284 ; *Elmendorf* v. *Harris*, 23 Wend. 227, 232, 233.) The plaintiffs are estopped by recitals in the patent to Crowe from avering or proving that the tax sale was defective or had been canceled or that the comptroller's deed to the state was not a valid and effectual conveyance of the lot.    (1 R. S. 388, § 6 ; 2 R. S. [7th ed.] 982, § 6 ; 2 Washb. on Real. Prop. 455, 473, §§ 23, 24, 25, 26 ; *Judd* v. *Seekins*, 62 N. Y. 226, 227.) By the execution and delivery of the patent, the state conveyed to Crowe the entire and absolute title to the lot.    (*People* v. *Livingston*, 8 Barb. 253 ; *People* v. *Van Rensseluer*, 8 id. 189, 193 ; *Wendall* v. *People*, 8 Wend. 183, 188 ; *People* v. *Dennison*, 17 id. 312, 313 ; Const. of N. Y. art. 1, § 2 ; *Bridger* v. *Pierson*, 45 N. Y. 601, 604.)    The patent to Crowe having been duly executed and recorded in the secretary of state's office became a matter of record and conclusive evidence of Crowe's title.    (*Jackson ex dem.* v. *Lawton*, 10 Johns. 23 ; Code Pro. §§ 428, 433 ; Code Civ. Pro. §§ 1957, 1959 ; *Jackson* v. *Marsh*, 6 Cow. 281, 282 ; *People* v. *Livingston*, 8 Barb. 253, 286 ; *People* v. *Mauran*, 5 Den. 389, 398, 400 ; *Parmalee* v. *O. & S. R. R. Co.*, 7 Barb. 599, 622, 623 ; 6 N. Y. 75, 81, 82 ; *Brady* v. *Begun*, 36 Barb. 533, 539 ; *United States* v. *Stone*, 2 Wall. 525, 535 ; *Moore* v. *Robinson*, 96 U. S. 530, 533 ; *Field* v. *Seabury*, 19 How. [U. S.] 332 ; *Becker* v. *Howard*, 47 How. Pr. 428 ; Laws of 1881, chap. 625, § 1 ; 1 R. S. [7th ed.] 573.) The plaintiffs failed to show any title or interest in the lot or property in question sufficient to enable them to maintain this action.    (*Jackson ex dem.* v. *Lawton*, 10 Johns. 23 ; *People* v. *Stephens*, 71 N. Y. 527, 549, 550 ; 1 R. S. 729, § 143 ; 3 id. [7th ed.] 2195, § 143 ; Laws of 1826, chap. 261 ; *Donalds* v. *State*, 89 N. Y. 36 ; *Fletcher* v. *Peck*, 6 Cranch, 136 ; Willard's Eq. Juris. 298 ; *Milliman* v. *Neher*, 20 Barb. 37, 40 ; 1 Cowen's Treatise [3d ed.], 320, 466 ; *Hotchkiss* v. *Mc Vicker*, 12 Johns. 403, 406 ; *Stevens* v. *Mayor, etc.*, 84 N. Y. 296, 305 ; *Heywood* v. *City of Buffalo*, 4 Kern. 534, 540 ; *Towle* v. *Jones*, 19 Abb. Pr. 449, 455 ; *Day* v. *Town of New Lots*, 107 N. Y. 149, 154, 155.)

HAIGHT, J.  This action was brought to recover for timber and bark cut and carried away from lot number 20, Ox Bow tract, Hamilton county.

Both parties claimed title to the land by patent from the state of New York.

It appears that in the year 1842 the land commissioners of the state made a contract of sale to one Andrew K. Morehouse of the land in question ; that Morehouse at the time paid thereon one-quarter of the purchase-money and gave his bond for the payment of the balance in six equal annual installments thereafter and received a certificate from the surveyor-general of the state.  On the 22d of January, 1884, Morehouse died, having never made a claim or demand for the patent of the lot or taken any steps to procure the same.  On the 7th of July, 1884, the plaintiff George W. Ostrander and Josephine B. Winchell, who was one of the heirs at law of Morehouse, made application for a patent under and by virtue of the contract of sale with Morehouse and in pursuance of such application the people of the state issued to Josephine B. Winchell their patent executed by the governor on the 5th day of August, 1884, in which they granted and quit-claimed to her all the right, title and interest which the people then had to the lot in question excepting and reserving all gold and silver mines.  Such patent was issued pursuant to a resolution of the commissioners of the land office passed August 5, 1884.  The plaintiffs, as grantees of Josephine B. Winchell, now have whatever title she obtained by virtue of such patent.

In the month of November, 1859, the land in question was sold by the comptroller of the state on account of unpaid taxes which had accrued against the land prior to that year, and at such sale the lot in question was bid in and purchased by the comptroller for the people of the state and by him conveyed to the people by deed bearing date the 11th day of March, 1862, which deed was recorded in the office of the comptroller in book 5 on page 147, on March 11, 1862, and in the office of the clerk of Hamilton county in book 12, page 400, May 30, 1877.  On the 4th day of August, 1870, and whilst such deed

was in force and valid the people of the state issued to Patrick
N. Crowe their patent executed by the governor under his hand
and the seal of the state in which they duly granted and quit-
claimed to him the lot in question together with all the rights,
herditaments and appurtenances to the same belonging or
appertaining, excepting and reserving only all gold and silver
mines, which patent was countersigned by the secretary of state
and recorded in his office in liber 40 of patents, at page 182, and
on the 30th day of August, 1883, was recorded in the clerk's
office of Hamilton county in book of deeds number 17 at page
481.    The defendant as the grantee of Crowe is the owner of
all the right, title and interest acquired by him under such patent.

Morehouse under his contract of purchase had the right of
possession and under the statutes of the state the land so pur-
chased by him became subject to taxation and to a resale in
case of default in payment of the taxes assessed thereon.    As
we have seen, such a sale took place in 1859 resulting in a deed
to the state in 1862, thus reinvesting the state with the title to
the land, and thereafter and in the year 1870 the state reconveys
to Crowe.    The patent issued to Crowe ante-dates that issued
to Winchell by fourteen years and consequently furnishes a
superior title unless it is void for the reason that the notice of
redemption did not conform to the statute in stating that unless
such lands are redeemed by the day named they will be con-
veyed to the purchaser.

It appears that in August, 1884, Ostrander applied to the
comptroller to have the sale of 1859 canceled for the reason
of this defect in the notice of redemption and thereupon a clerk,
on direction of the comptroller, entered upon the book of tax
sales of the lands of non-residents, in the column under the head-
ing of names of persons redeeming, the words "canceled, not
properly advertised for redemption."

If this action on the part of the comptroller effects the can-
cellation of the sale it operates to divest the defendant of title
to the premises in question.    We shall, therefore, first consider
this question.

It appears that neither Crowe nor the defendant had any

knowledge of the application of Ostrander to the comptroller for a cancellation of the sale or of the application for the patent that was issued to Winchell. It is not pretended that any notice was in any manner given of such applications. The statute provides that: "Whenever the comptroller shall discover, prior to the conveyance of any lands sold for taxes, that the sale was for any cause whatever invalid or ineffectual to give title to the lands sold, the lands so improperly sold shall not be conveyed, but the comptroller shall cancel the sale, and forthwith cause the purchase-money and interest thereon to be refunded out of the state treasury to the purchaser, his representatives or assigns."

And again, "If the discovery that the sale was invalid shall not be made until after the conveyance shall have been executed for the lands sold, it shall be the duty of the comptroller, on receiving evidence thereof, to cancel the sale, to refund out of the state treasury to the purchaser, his representatives or assigns, the purchase-money, and interest thereon," etc. (Laws of 1855, chapter 427, sections 83, 85.)

It is now contended that under these provisions of the statute the comptroller may at the instance of any person cancel the sale without notice to the purchaser and thus cut off any vested interest that he may have acquired. This proposition is somewhat extraordinary for it permits the comptroller at any time, even many years after the sale and after the land has been made valuable by improvements, to absolutely cut off and deprive parties of the title acquired by them without an opportunity to be heard.

We do not understand this to be the purpose of these provisions. They have already received judicial construction in the cases of *People ex rel. Wright* v. *Chapin* (104 N. Y. 369) and *People ex rel. Ostrander* v. *Chapin* (105 id. 309), in which it was held that the provisions were enacted for the benefit of the purchaser and to relieve him from the consequences of a defective tax title; that the owner of the land was not properly a party to the proceeding nor could he be permitted in any way to test the validity of the sale in such proceedings.

DANFORTH, J., in delivering the opinion of the court in the former case, says: " The evident object of these provisions was to enable the state to relieve the purchaser from the consequences of a defective tax title, and at the same time replenish its treasury by a speedy collection of the tax withheld from it. The owner of the land is not a party to the proceeding, nor is he permitted in this way to test the validity of the sale or tax. In such a controversy the purchaser would have an interest and a right to its protection in the courts, by the usual course of legal proceedings. The statute contains no intimation of a legislative purpose to deprive him of that right. It gives no process to bring him in, confers no power to compel witnesses. In short, it creates no court, provides for a single transaction to which the comptroller and the purchaser are the only parties"

It is hardly necessary to consider the question further for it at once becomes apparent that the purchaser is a necessary party in the proceeding to cancel the sale, as he is the one chiefly interested.

We are, therefore, inclined to the opinion that the attempted cancellation was ineffectual.

It remains to be determined whether the sale was invalid by reason of a defective notice to redeem.

Section 65 of the aforesaid act provides that " The comptroller's deed shall be presumptive evidence that the sale, and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed to redeem, were regular, according to the provisions of this act, and all laws directing or requiring the same, or in any manner· relating thereto."

The only evidence appearing in the appeal book bearing upon the question of a defective notice to redeem was given by the witness Sanger, a clerk in the comptroller's office who produced in court a book which contained printed notices clipped from newspapers pasted therein, among which appeared the following " The Sentinal, Sageville, Hamilton county, July

11, 1861. List of lands sold for arrears of tax of 1859. Comptroller's office, Albany, March 20, 1861 : Notice is hereby given, pursuant to title 2, chapter 427 of the Laws of 1855, that at the sale above mentioned, which closes on the 28th November, 1859, the following described pieces or parcels of land, situate in the county of Hamilton, were sold for arrears of taxes due thereon, and which remained unredeemed, and that the payment into the treasury of this state of the sum set opposite each lot, piece or parcel of land, will be required to redeem the same respectively at the time for the redemption thereof, which will be on the 28th November, 1861. Robert Dennison, Comptroller." "Hamilton county. Description of land remaining unredeemed at comptroller's tax sale of 1859, Ox Bow track, lot 20 ; 250 acres ; $8.16."

There was also a similar notice pasted in the book as having been clipped from the " Democrat," Johnstown, N. Y., June 4, 1861. There was no affidavit on the part of the publishers of these newspapers in reference to the length of time that these notices were published in their respective papers. There is no certificate attached to it or proof that they were the notices published.

Sanger upon cross-examination testified that he was not in the comptroller's office in 1859 or in 1861 ; that he had no personal knowledge that these notices were published anywhere ; that what he had stated about their being taken from the paper and pasted in the book was what he had been told ; that he had no personal knowledge of the contents of the papers and that correct notices might have been published for all that he knew. We are inclined to the opinion that this evidence is not sufficient to overcome the presumption created by statute.

The land in question was a wild and uncultivated tract and not occupied by the plaintiffs or any one in their behalf.

The law of 1855, chapter 427, section 65, was amended in 1885, chapter 448, so as to provide as follows : " Such conveyances shall be executed by the comptroller, under his hand and seal, and the execution thereof shall be witnessed by the treas-

urer or deputy comptroller, and all such conveyances that have been heretofore executed by the comptroller, and all conveyances of the same lands by his grantee or grantees therein named, after having been recorded for two years in the office of the clerk of the county in which the lands conveyed thereby are located, and all outstanding certificates of a tax sale heretofore held by the comptroller that shall have remained in force for two years after the last day allowed by law to redeem from such sale shall, six months after this act takes effect, be *conclusive evidence* that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of this act," etc.

As we have seen the deed by the comptroller to the people of the state and the patent subsequently issued to Crowe were recorded in the office of the clerk of the county of Hamilton more that two years before the passage of this act, and more than six months have elapsed since the act took effect. They are, therefore, brought within the express provisions of the act which makes them conclusive evidence that the notice to redeem was regular and regularly given and published according to law. This act is not in conflict with any of the provisions of the Constitution and must, therefore, be deemed to have finally disposed of this question. (*People* v. *Turner*, 117 N. Y. 227; *Ensign* v. *Barse*, 107 id. 329; *Chamberlain* v. *Taylor*, 36 Hun, 24–38.)

The judgment should be affirmed with costs.

All concur, except PARKER J., not voting.

Judgment affirmed.