PEOPLE ex rel. HAMILTON PARK CO. v. WEMPLE.   495

THIRD DEPARTMENT, FEBRUARY TERM, 1893.

# THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE HAMILTON PARK COMPANY v. EDWARD WEMPLE, as late Comptroller, and FRANK CAMPBELL, as Comptroller of the State of New York.

67   495
139a 240
67   495
7ap364

*Cancellation of tax sales by the Comptroller — on application of an owner of land — right of the purchaser to object — measure of review, by* certiorari, *of proof before the Comptroller — tax void for want of jurisdiction — limitation, in chapter* 448 *of* 1885, *inapplicable.*

By force of the provision of chapter 217 of the Laws of 1891, which empowers the State Comptroller to hear and determine applications for the cancellation of tax sales, made by " any person interested in the event thereof," the power and right is conferred upon the original owner of land sold for taxes to apply to the Comptroller to cancel the sale.

Since the purchaser of land at a tax sale, takes it subject to the contingency of the sale being canceled by the Comptroller as provided by statute, on proof that the tax was illegally assessed or has been paid, he cannot object to such a cancellation, on the application of the original owner, on the ground that he is thereby divested of his title against his will, without a day in court, and that he is thus deprived of an opportunity of defending his title.

On review, upon *certiorari,* of the action of the Comptroller in canceling a tax sale the court will not pass upon disputed questions of fact, but will examine the record to ascertain whether there was evidence before the Comptroller to support his conclusion that the tax was illegal and void.

Certified searches of title, verified by affidavit, may be received and acted upon by the Comptroller as evidence of the original ownership of the land sold for taxes.

Where a railroad company, the original owner of land sold for taxes, applied to the Comptroller to cancel the sale, on the ground that its lands had, under an act of the legislature, become exempt from taxation on the completion of its road:

*Held,* that a report of the State Engineer and a decision of the Attorney-General, to the effect that the act had been complied with, warranted the Comptroller in deciding that the land was exempt from taxation, and that the tax for which it had been sold was consequently void.

The fact that a tax was not extended by or under the direction of the board of supervisors of the county, but by each individual supervisor after the final adjournment of the board, renders the tax void.

When a tax sale is void for want of jurisdiction an application by the original owner of the land to the Comptroller to cancel the sale is not barred by the lapse of time, fixed by chapter 448 of the Laws of 1885, for the Comptroller's certificate of sale becoming presumptively conclusive.

WRIT of *certiorari* issued for the purpose of reviewing the action of the late Comptroller of the State of New York, in canceling

**496** PEOPLE ex rel. HAMILTON PARK CO. *v.* WEMPLE.

THIRD DEPARTMENT, FEBRUARY TERM, 1893.

three several tax sales, and the certificates and deeds issued and made in pursuance thereof under which the relator claims title to a large tract of land in township 36, in Hamilton county.

The writ is directed to Edward Wemple, as late Comptroller, and to Frank Campbell, the successor of Wemple, and the present Comptroller of the State, and was allowed April 28, 1892, pursuant to an order of that date made at the New York Special Term.

*Charles R. Hardy* and *Esek Cowen,* for the relator.

*Arthur L. Andrews,* for the Comptroller.

MAYHAM, P. J. :

The Comptroller, in the year 1877, sold for unpaid taxes accruing from 1867 to 1870, inclusive, in township No. 36, in Hamilton county, 17,245 acres of land, more or less, being all that remained of the township after deducting certain exceptions as described in the certificates of sale, and by his deed, thereafter made dated January 29, 1884, conveyed the same to Charles W. Durant.

The Comptroller also, in 1881, sold for unpaid taxes of 1871 to 1876, inclusive, in the same township, 20,954 acres of land, more or less, being the land not under water, of all that remained of that township after making certain exceptions described in the certificates of sale ; and on the 29th day of January, 1884, gave his deed, as Comptroller, to Howard M. Durant for the same.

In 1885, the Comptroller sold for unpaid taxes of 1877 to 1882, inclusive, the same lands that were sold by him in 1881 in that township, and executed therefor a Comptroller's deed dated April 9, 1889, to Howard M. Durant.

The return shows that the relator succeeded to the title acquired by Charles W. and Howard M. Durant after the conveyances to them by the Comptroller, but at what precise time the record on this *certiorari* does not disclose.

On December 9, 1885, the Adirondack Railroad applied to the Comptroller to cancel the tax sales of 1877, 1881 and 1885, on the ground that they covered property belonging to the company, and which, under the laws of the State, were exempt from taxation. On the application, the Comptroller held that the former owner of the land is not a proper party to apply to the Comptroller to cancel a

PEOPLE ex rel. HAMILTON PARK CO. v. WEMPLE.  497

THIRD DEPARTMENT, FEBRUARY TERM, 1893.

tax sale, and denied the application.  And his decision was dated June 23, 1888.

On the 27th of December, 1889, an application was made by Janet L. Durant, Edward L. Molineux and the legal representatives of the Adirondack Railway Company to the Comptroller to cancel the tax sales for the year 1885.  That application was made on the ground that the taxes for the years for which it was made, were not extended by the board of supervisors of the county, but by the individual supervisor of the town.

On the 17th of November, 1891, an application was filed in the office of the Comptroller by the Adirondack Railway Company and certain of its grantees, asking for a rehearing of the application filed December 9, 1885.

This application was opposed by the relator, but was on the 30th of December, 1891, granted by the Comptroller by the following order:

STATE OF NEW YORK:

COMPTROLLER'S OFFICE,<br>ALBANY, <i>Dec.</i> 30, 1891.

It appearing to my satisfaction that the lands described as Hamilton county, Totton & Crossfield's Purchase, Township 36, N. W. corner, 1,000 A., S. E. corner, 2,000 A., during all of each of the years 1876 to 1882, inclusive, belonged to the Adirondack Company, its assigns or successors, and that said lands, pursuant to the provisions of chapter 236, Laws of 1863, and amendatory and subsequent acts, were then exempt from taxation.

And it further appearing to my satisfaction that the board of supervisors of Hamilton county in 1867 to 1882, inclusive, failed to extend any taxes on the assessment-rolls of the town of Long Lake the cancellation of 1877, 1881 and 1885 tax sales of said lands as well as the part of said township subject thereto, in accordance with the requirements of chapter 217, Laws of 1891, is hereby ordered.

EDWARD WEMPLE,<br><i>Comptroller.</i>

The relator by this writ seeks to review this determination of the Comptroller, and insists that that officer wholly misconstrued the

**498** PEOPLE ex rel. HAMILTON PARK CO. *v.* WEMPLE.

THIRD DEPARTMENT, FEBRUARY TERM, 1893.

effect of chapter 217 of the Laws of 1891, under which he assumes to act in vacating these tax sales.

The principal question, or at least the first question, presented for consideration on this *certiorari* is, whether chapter 217 of the Laws of 1891, confers upon the owners of land sold for taxes the power and right to apply to the Comptroller to cancel a tax sale.

Prior to the enactment of that chapter, it had been held by the Court of Appeals in the case of *People ex rel. Wright* v. *Chapin, Comptroller* (104 N. Y., 369), that the owner of the land sold for taxes by the Comptroller was not permitted to test the validity of the sale by an application to that officer to set aside the sale. In that case the court uses the following language in the discussion of this question : "The owner of the land is not a party to the proceeding, nor is he permitted in this way to test the validity of the sale or tax. In such a controversy the purchaser would have an interest and a right to its protection in the courts by the usual course of legal proceedings.

The statute contains no intimation of a legislative purpose to deprive him of that right. It gives no process to bring him in ; confers no power to compel witnesses. In short, it creates no court ; provides for a single transaction to which the Comptroller and purchasers are the only parties."

Acting upon this decision the Comptroller, on the 23d of January, 1888, in disposing of an application of the Adirondack Railway Company for cancellation of certain tax sales of lands in township 36, Hamilton county, used this language : "After a careful consideration of the matter I think that the application must be denied under the authority of *Wright* v. *Chapin, Comptroller* (104 N. Y., 369–372). In that case the Court of Appeals held that the former owner is not the proper party to an application to the Comptroller to cancel a tax sale, and has no right and would not be permitted in any way to test the validity of the sale." Holding that the authority conferred upon the Comptroller to test the validity of tax sales was for the benefit of the purchaser on such sale and concerned no one but the State, the purchaser and the town or county from which the unpaid tax was returned.

It would thus seem that the law upon that subject was authoritatively settled until the decision of the *People* v. *Turner* (117 N. Y., 239), which again seemed to involve the question in doubt. The

PEOPLE ex rel. HAMILTON PARK CO. v. WEMPLE. 499

THIRD DEPARTMENT, FEBRUARY TERM, 1893.

court, after discussing the constitutional requirements of notice of the time and place at which the taxpayer may be heard before his property can be taken upon tax assessments and tax sales, RUGER, Ch. J., uses this language: "But more than this, after the tax has been returned to the Comptroller, the taxpayer has still the right, both before and after the sale of his property, to appear before that officer and make proof of any illegality in the tax levy and demand that such tax and any sale made thereon shall be canceled by him." (Citing sections 83 and 85 of the Laws of 1855.)

"And finally the act of 1885 itself provides for the exercise of the right of the Comptroller to cancel taxes and sales illegally made, where the taxes have been legally paid or where the town or ward had no legal right to assess the land. These rights were not only open to the taxpayer to exercise at any time previous to the act of 1885, but the right of all persons to exercise them was also preserved, in all cases, for six months after the passage of that act."

This case was decided in November, 1889, and before the enactment of chapter 217 of the Laws of 1891, and it is insisted by the Comptroller that this latter act was passed, in part, to relieve the question from the confusion in which, by the two decisions from which we have quoted, it was apparently involved.

Chapter 217 of the Laws of 1891 amends section 2 of chapter 427 of the Laws of 1855 so as to read as follows: " The provisions of this act are hereby made applicable to all the counties of this State, except the counties of Cattaraugus and Chautauqua, but shall not affect any action, proceeding or application pending at the time of its passage, nor any action that shall be begun, proceeding taken or application duly made within six months thereafter for the purpose of vacating any tax sale, or any conveyance or certificate of sale made thereunder.

"All applications heretofore or hereafter made to the Comptroller for the cancellation of any tax sale by any person interested in the event thereof, shall be heard and determined by him, and his determination shall be subject to review by *certiorari* or otherwise."

The whole question upon this branch of the case is as to the effect to be given to the words "interested in the event thereof" in the above-quoted section.

If that language can be construed as broad enough to embrace all

500 PEOPLE ex rel. HAMILTON PARK CO. *v.* WEMPLE.

THIRD DEPARTMENT, FEBRUARY TERM, 1893.

persons interested in the land, then the Comptroller was clearly authorized to entertain the application of the original owner to have the tax sale set aside, so that such owner might be reinstated in the land of which by such sale he was deprived.

If, on the other hand, these words only related to the event of the assessment and sale, without reference to the title to be affected by it, then, within the case of *Wright* v. *Chapin* (*supra*), the only persons interested must be held to be the purchaser, the town and the State, through the Comptroller, and the original owner would still be within the disabilities indicated by that case.

But was the original owner of the land sold under a tax sale interested in the event, either of the sale or of the proceedings to set aside, or cancel the sale? I think he was; and as this language under discussion was not in the Laws of 1855, which are amended by the Laws of 1891, I think it may be fairly inferred that the legislative intent in the enactment of this amendment was to allow the original owner, as a person interested in the event, to apply for the cancellation of a tax sale of his lands. Clearly the event of a sale and conveyance of the title of the original owner of land would affect his interest.

His title would be beclouded by an apparent government sale, and while it might not be such a cloud as could be removed by action, if any defect could be found in the proceedings when the purchaser sought to enforce his title, yet the owner could not be said to be other than interested in the event.

If we are right in this conclusion, then the original owner had a right to apply, under chapter 217 of the Laws of 1891, for a cancellation of this sale, unless the rights of such owner were barred, or in some way waived or lost.

This view is strengthened from the fact that we are asked in this proceeding to review by *certiorari*, given by the same chapter and section, the acts of the Comptroller.

As the Comptroller assumed to cancel this tax sale under the provisions of chapter 217 of the Laws of 1891, it is clear that he regarded the law under which he acted in his order of June 23, 1888, as changed by its provisions.

There is great force in the contention of the learned counsel for relator, that in this proceeding the purchaser of the land under the

tax sale is divested of his title against his will without a day in court, and is thus deprived of his opportunity of defending his title.

But, in purchasing under a tax sale, he takes the qualified title subject to the power of the Comptroller to cancel such sale on his ascertaining that the tax for which the sale was made was invalid, or illegally or improperly imposed, or had been duly paid. It seems to follow, therefore, that the title of the relator, acquired under this special statutory proceeding in derogation of the common law, by which the owner is sought to be divested of his title, is, by the very statute by which the authority to sell lands for unpaid taxes by the Comptroller, subject to be defeated by the Comptroller, under whose authority it was made, when he who is the statutory tribunal to pass upon that question shall determine that the tax was illegally assessed, or has been paid, and the purchaser under such sale takes, subject to that contingency.

But the learned counsel for the relator insists that if it be held that the Comptroller had a right to enterain the application of the original owner, then this proceeding brings before this court the question of the sufficiency of the evidence upon which he acted in the cancellation of the tax sales of 1877, 1881 and 1885.

This is in the nature of a demurrer to the sufficiency of the legal proof before the Comptroller to uphold this order as matter of law; and while the court on *certiorari* will not pass upon disputed questions of fact, it will look into the return to see if the final conclusion of the officer or tribunal whose decision is under review is justified by the proofs. (*People* v. *Board of Police*, 39 N. Y., 506; *People ex rel. Western R. R. Co.* v. *Assessors of Albany*, 40 id., 154; *People ex rel. Wilbur* v. *Eddy*, 57 Barb., 593.)

As disputed questions of fact cannot be litigated in this proceeding, we are only required to look through the record to ascertain whether there is any evidence before the Comptroller from which the conclusion can be reached that these tax sales were illegal and void for want of jurisdiction in the person or persons by whom the tax was assessed and levied by the board of supervisors of Hamilton county against these lands.

It is objected that there was not sufficient evidence before the Comptroller, when he canceled the sales of 1877 and 1881, that the

lands were, at the time of the assessment, owned by the Adirondack Railway Company and were exempt from taxation.

If we are to take the certified searches of title presented to and filed with the Comptroller on the application of the Adirondack Railway Company for the cancellation of these sales as competent evidence to be considered by him on that application, his conclusion that that corporation had title to these lands is fully sustained. But it is insisted by the relator that there is no statute making such certified searches evidence in these proceedings, and, hence, that they were not competent evidence of the facts which they contain and that the Comptroller could act only upon the conveyances themselves, and that, as they are not returned, the return contains no legal evidence of the title in the Railway Company.

The practice of receiving proof by affidavit by the Comptroller in proceedings of the character which would not be competent in a common-law action seems to have obtained in proceedings of this character and have received judicial sanction.

In the *People ex rel. Ostrander* v. *Chapin* (105 N. Y., 309), which was a proceeding before the Comptroller to cancel a tax sale, the Comptroller declined to act upon proof by affidavit and the Court of Appeals upheld a *mandamus* to compel the Comptroller to act upon such proof.

In the case at bar the correctness of the abstracts of the deed and records referred to in the return were verified by the clerk, in whose custody they were found, and were also verified by the affidavit of Joseph M. Lawson. It is true that this affidavit, as to the abstract being a full and correct abstract of the title of the Railway Company, is on information and belief, but the correctness of the abstract given is positively verified in that affidavit and the completeness of the search being certified by the clerk within the principle of the decision of *People ex rel. Ostrander* (*supra*), that certificate may be treated as an affidavit, then we see no defect in the proof upon which the Comptroller assumed to act.

It is quite true that this kind of proof would not be competent in an action of ejectment between the relator and the Railway Company. (*Handley* v. *Greene*, 15 Barb., 601; *Baker* v. *Kingsland*, 10 Paige, 366; *Lansing* v. *Russell*, 3 Barb. Ch., 325.) But, as we have seen, the courts have sanctioned a different rule of evidence in this class of cases.

But it is further urged by the relator that there is no evidence before the Comptroller that the road was completed as required by chapter 236 of the Laws of 1863, so as to give its land immunity from taxation.

Upon this subject the Comptroller, it appears, relied upon the State Engineer's report of railroads for 1878, upon the faith of which the United States bonds deposited with the Comptroller had been surrendered.

It is true that the engineer's report is not set out *in hæc verba,* but the year, volume and page being given, I think that a sufficient compliance with the requirements of the writ as to the return of evidence upon which he acted in making the order. Again, the Comptroller refers to the opinion of the Attorney-General upon that subject, in which that officer officially advises the Comptroller, in answer to a question, as follows: " I think the evidence is sufficient and satisfactory."

As it had been officially determined by the Attorney-General and a former Comptroller that the act had been complied with by the railway company so as to exempt it from taxation, it would seem that the Comptroller in making the order of cancellation in this case could have relied upon such official acts. If, then, the Comptroller was right in assuming from the evidence that the railway company had immunity from taxation under the act of 1863, and the various amendatory acts thereto, then it must follow that the board of supervisors had not power to levy a tax upon or against such lands, and their acts in doing so were *coram non judice* and void.

It was also established by proof before the Comptroller that the tax on which the sale of 1885 was made was not extended by or under the direction of the board of supervisors, but by each individual supervisor after the final adjournment of the board; such an act would be clearly unauthorized and would be a clear violation of duty because of which the tax would be void.

But it is also insisted by relator that the proceedings were clearly barred, and every error, omission and defect in these tax sales were clearly cured by the provisions of chapter 448 of the Laws of 1885.

By that act the Comptroller's certificate, in four years after its issue, and after the expiration of two years from the delivery of the Comptroller's deed, and six months after the passage of the act, is

**504** PEOPLE ex rel. HAMILTON PARK CO. *v.* WEMPLE.

Third Department, February Term, 1893.

presumptively conclusive. If the defects complained of were mere irregularities, or informalities in levying these taxes by an officer or board having jurisdiction and authority to impose the tax, then, within the letter and spirit of the act of 1885, this application would clearly have been barred by lapse of time between the time of sale to the relator, or its grantor, and that of making this application, unless the application could be treated as pending at the time of the passage of the act of 1885, or the amendment of 1891, and thus come within the saving clause which exempts pending actions and proceedings from the application of these acts.

But the view we take of this proceeding does not make it material for us to consider whether this order was made as the renewal of a motion which had been denied in 1888, or is to be regarded as an original application.

The defects in the tax sale in this case for which the Comptroller set it aside, related to the jurisdiction of the supervisors to impose a tax upon lands exempt from taxation by statute from 1867 to 1882, inclusive, and the failure of the supervisors to extend the tax during the same time, and that it is claimed that by reason thereof the supervisors and taxing officers never had jurisdiction to impose the tax.

The sale was, therefore, void for want of jurisdiction, and did not, therefore, come within the limitation prescribed by chapter 448 of the Laws of 1885. In *Ensign* v. *Barse* (107 N. Y., 329) the court in this class of proceedings recognize a distinction between a case of mere irregularity and one of want of jurisdiction. The irregularity is cured by the lapse of time, and the title vests in the purchaser after the period fixed by the statute.

But in case of absolute want of jurisdiction the rights of the owner by a void sale are not disturbed, and this doctrine would seem to be elementary. In *Cromwell* v. *MacLean* 123 N. Y., 474) Peckham, J., says: "If the proceedings of the taxing power have been so fatally defective on account of a failure to comply with the requirements of the statute, that no title to the property of the tax-payer has passed to the purchaser at the tax sale, I do not think there is any correct principle upon which can be based the claim, that the taxpayer nevertheless holds his property from that time on at the mercy of the legislature, and subject to its power at any

time, so far as he is concerned, to validate and give life and effect to the otherwise void sale." The case of *Joslyn* v. *Rockwell* (128 N. Y., 334), is substantially to the same effect.

We are, therefore, of the opinion that the order of the Comptroller must be confirmed, and the writ of *certiorari* quashed, with fifty dollars costs and printing disbursements to the defendants.

PUTNAM and HERRICK, JJ., concurred.

Order of Comptroller confirmed and writ of *certiorari* quashed, with fifty dollars costs and printing disbursements.