THE PEOPLE ex rel. GEORGE W. OSTRANDER, as Administrator, etc., et al., Respondents, *v.* ALFRED C. CHAPIN, as Comptroller, etc., Appellant.

The State comptroller, in case of his refusal, may be required by *mandamus* to hear and determine an application made to him by a purchaser of real estate, at a State tax sale, to cancel the sale and refund the purchase-money, where the purchaser alleges and presents proof to show that the tax was invalid.

The powers of the comptroller to cancel tax sales under the act of 1855 (chap. 427, Laws of 1855), are not limited to cases where the invalidity of the sale appears upon the face of the proceedings; but extend to all cases where it is made to appear that the sale was ineffectual for any reason to enable the purchaser to obtain title to the land purchased.

The power thus given to the comptroller is in the nature of a judicial function; he has authority to take proof of any alleged defect; he may swear witnesses produced before him (1 R. S. 185, § 1.); receive affidavits; in fine, all the power required to enable him to conduct the investigation is conferred upon him. (Code of Civil Pro. § 843 )

*It seems* that, under the Penal Code (§ 96), a witness produced before the comptroller on such a hearing is subject to the pains and penalties of perjury for swearing falsely.

The said act of 1855 is not limited to cases where the invalidity complained of results from some defect in the proceedings of the comptroller himself in respect to the sale, it includes any defect which invalidates the tax. The failure of title is the essential ground upon which restitution of the purchase-money is to be made.

The petition of the relator, on application to the comptroller to cancel a tax sale and refund the purchase-money, set forth that the board of supervisors of the county failed to extend the tax on the assessment-roll, but delegated it to the supervisor of the town to make the extension and did not subsequently ratify it. The relator also produced the affidavit of the clerk of the board and of one of the members of the board substantiating the allegations of the petition, and offered to produce satisfactory evidence of the alleged defect from witnesses who

knew the facts. *Held,* that it was the duty of the comptroller to hear and decide the case; and that upon his refusal so to do, a *mandamus* was properly granted.

(Argued March 15, 1887; decided April 19, 1887.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made November 24, 1886, which affirmed an order of Special Term directing the issuing of a peremptory writ of *mandamus* directed to the comptroller of the State, requiring him to proceed to hear and determine the application of the relators for the cancellation of a tax sale and refunding the purchase-money.

The facts appear sufficiently in the opinion.

*Denis O'Brien,* Attorney General, for appellant. The determination of the comptroller was justified. (Laws of 1855, chapter 427, § 83.) The affidavit of the purchaser could not stand as a substitute for common law evidence of the irregularity claimed to exist. (*People ex rel. Vogler* v. *Walsh,* 87 N. Y. 485, 486; *People ex rel. Wright* v. *Chapin,* 4 East. Rep. 305; *Mayor, etc.* v. *Davenport,* 92 N. Y. 612; *Cagwin* v. *Hancock,* 84 id. 537.) If the comptroller had any discretion to exercise upon the question of entertaining the applications of the relators herein, for the reasons stated, then the court at Special Term had no right to sit in judgment upon his exercise thereof, or to coerce his action in that behalf. (*People ex rel. Demorest* v. *Fairchild,* 67 N. Y. 334; *People ex rel. Hammond* v. *Leonard,* 74 id. 443.) The refusal of the comptroller to entertain the application of the relator and to take the action requested of him, may be upheld upon any ground that now appears, which could not have been remedied if the point had been raised by the comptroller upon the application. (*Allard* v. *Greasart,* 61 N. Y. 4; *People ex rel. Millard* v. *Chapin,* 104 id. 96; *People ex rel. Sheridan* v. *French,* 31 Hun, 618.)

*Arthur L. Andrews* for respondents. A *mandamus* is the proper remedy. (Laws of 1855, chap. 427, §§ 83, 85;

*People ex rel. Ward* v. *Astor*, 49 How. Pr. 405; 62 N. Y. 623; *People ex rel. Boltzer* v. *Daley*, 37 Hun, 461.) The statute confers upon the comptroller the power, and makes it his duty to cancel every invalid State tax sale. (Laws of 1855, chap. 424, § 83; *In re O'Neil*, 91 N. Y. 520.) The great principal which is to control is the intention of the legislature in passing the act which intention is to be ascertained from the cause or necessity of making the statute, as well as other circumstances. (*People ex rel Wood* v. *Lacombe*, 99 N. Y. 43, 49; *People ex rel. Wright* v. *Chapin*, 2 Cen. Rep. 467.) The comptroller is authorized to take such proofs of alleged irregularities as will enable him to determine whether the sale is ineffectual to give title. (1 Kent's Com. 464; *Stief* v. *Hart*, 1 N. Y. 20.) Section 843 of the Code of Civil Procedure, is designed to afford the comptroller a method of acquiring the proof required for a determination of this application. (Penal Code § 96; *Clarke* v *Davenport*, 95 N. Y. 477, 483.) The irregularity sought to be established is a fatal defect. (*Bellinger* v. *Gray*, 51 N. Y. 610, 617; *People* v. *Hagadorn*, 36 Hun, 610; *Newman* v. *Supervisors*, 45 N. Y. 690.)

RAPALLO, J. The question presented by this appeal is, whether the comptroller can be required by *mandamus* to hear and determine an application made to him by a purchaser at a State tax sale of real estate, to cancel the sale and refund the purchase-money, where the purchaser alleges that the tax was invalid and presents proof in support of his allegation.

Chapter 427 of the Laws of 1855, section 83, provides as follows: " Whenever the comptroller shall discover, prior to the conveyance of any lands sold for taxes, that the sale was, *for any cause whatever*, invalid or ineffectual to give title to the lands sold, the lands so improperly sold *shall not be conveyed*, but the comptroller *shall cancel* the sale and *forthwith* cause the purchase-money and interest thereon to be refunded, out of the State treasury, to the purchaser, his representatives or assigns." Section 85 provides that if the discovery that

the sale was invalid shall not be made until after the convey-
ance, it shall be the duty of the comptroller *on receiving evi-
dence thereof* to cancel and refund, etc., and to recharge the
county from which the tax was returned, with the amount
refunded.

The tax sale in this case was made by the comptroller in
1871, for the unpaid taxes of the years 1861 to 1865 inclusive,
upon certain lands in the town of Wells, in Hamilton county.
The purchaser paid the purchase-money and received the usual
certificates of sale, and afterwards assigned them to the relators.
No deed appears to have been given by the comptroller con-
veying the land sold.

The relators claim that they have found that the board of
supervisors of the county of Hamilton did not, in any of the
years, for the taxes of which the lands were sold, estimate and
set down in the assessment-rolls, the sums to be paid as a tax
upon the lands, as required by 1 Revised Statutes, 395, section
33, and this omission, the relators allege, rendered the sale
invalid, and ineffectual to give title to the lands sold.

On or about the 8th of December, 1835, they made appli-
cation, by petition in writing, to the comptroller for a cancel-
lation of the sales and the refunding of the purchase-money.
Their petition set forth the sale and the issuing of the certifi-
cates, and alleged that the supervisors of the several towns of
Hamilton county, and town of Wells, failed to extend the
tax on the several assessment-rolls, as a board of supervisors,
but delegated to each individual member to do the same, and
did not subsequently ratify said extension. The petition was
accompanied with the certificates of the sales and the assign-
ments thereof.

In August, 1886, the relators, through their counsel, request
the comptroller to take action on their application, and pro-
duced to him the affidavit of the clerk of the board of super-
visors of Hamilton county, who was in office during the years
1861 to 1865, both inclusive, and also the affidavit of one of the
members of said board, substantiating the allegations of their
petition, and at the same time offered to produce satisfactory

evidence of the defect alleged, from witnesses who knew the facts.

On the 20th of August, 1886, the comptroller sent to the attorneys for the relators the following communication refusing their request :

"STATE OF NEW YORK,     }
"COMPTROLLER'S OFFICE,   
"ALBANY, *August* 20, 1886. }

"In the matter of the request to grant application 223 on the production of satisfactory proof of irregularities not patent on the face of the records.

STEDMAN, THOMPSON & ANDREWS, *Albany, N. Y.*

GENTLEMEN.— While I do not question the force of the authorities cited by the applicant in making this special request, and while I have no reason to doubt his ability to produce before me evidence of the kind and force that would be required upon a trial in court, it nevertheless seems to me that his request is, practically, that I should assume judicial powers and functions not conferred upon me. The so-called common law evidence which the applicant offers to produce before me would not, after all, be evidence in any technical sense. It would be such, superficially, but it would not and could not be invested with the attributes, or expose the witness giving it to the penalties accompanying the giving of true or false testimony under legal oath before a duly qualified tribunal. The applicant's request is, therefore, denied.

"Respectfully yours,

"ALFRED C. CHAPIN,
*Comptroller.*"

The relators thereupon, on affidavits stating the foregoing facts, made a motion in the Supreme Court at Special Term for a writ of *mandamus*, commanding the comptroller to proceed to hear, act upon and determine the application made by the relators, and to receive such evidence, to be offered by the applicants, as would be competent in a court of justice, or such proof as is authorized by statute.

In oppostion to the motion the comptroller presented his own affidavit, setting forth his letter of August twentieth, and alleging that, in his belief, the statutes of this State did not clothe him with the power to examine, in a judicial capacity, evidence *aliunde* the record, for the reasons set forth in said letter.

The position taken by the comptroller thus appears to have been that the act of 1855, directing him to cancel tax sales and cause the purchase-money to be refunded to the purchaser, or his assigns (Laws of 1855, chap. 427, § 83), applied only to cases where the invalidity of the sale appeared upon the face of the proceedings, and that he had no power to cancel a sale where the invalidity did not thus appear, but had to be established by extrinsic evidence.

The motion for a *mandamus* was granted by the court at Special Term, and the order was affirmed at General Term, and the comptroller now appeals to this court.

We are of opinion that the powers of the comptroller, under the statute of 1855, are not so restricted as he contends. The statute, so far from providing merely that he shall cancel the sale on discovering that it is invalid for any cause appearing on the face of the proceedings, enacts that when he discovers that it is, *for any cause whatever,* invalid or *ineffectual to give title to the lands sold,* he *shall* cancel the sale and *forthwith* cause the purchase-money, with interest, to be refunded to the purchaser.

This statute was evidently intended to vest the comptroller with power, and require him, to make restitution to purchasers at tax sales, of the purchase-money paid by them, whenever it should be found that the sale was ineffectual, for any reason, to enable them to obtain title to the land which they had bought and paid for. This was just to the purchasers, who were entitled under section 63 of the same act of 1855, to a title in fee, but who at the time of the passage of the act of 1885 would have had no legal remedy to recover back their money from the State in case their title failed. It is not certain that they would have any remedy now, unless one is afforded by the act of 1855. The remedial

feature of that act is also supported by considerations of sound policy, as it was calculated to encourage persons to bid at tax sales, by the assurance that they would either get title to the land they bought, or a return of their money, and were not likely to lose both.   It was beneficial to the land owner, because it tended to make his land bring a better price at the sale, and also to the State, as it tended to enable it to collect its unpaid taxes, by encouraging purchases at 'ax sales.

To restrict the comptroller, in this power of canceling sales, to cases where the invalidity appears upon the face of the proceedings, would not only do violence to the language of the statute, but would frustrate its intent.   The intent was to protect the purchaser in case the sale was found to be ineffectual to give him title.   This protection would be very inadequate if it left him to take the risk of all the many other defects which might exist in a tax title.   As to those, the purchaser would have had no remedy except by petitioning the legislature in case his title proved invalid, for in 1855 there was no other mode of obtaining redress from the State, and it is at least questionable whether the subsequent statutes establishing the Board of Audit and the Board of Claims would afford a remedy.

Section 85 of the same act shows very clearly that by the words " for any cause whatever " the intention was to provide for cases where the invalidity depended upon extrinsic facts, to be established by evidence, for that section provides for the cancellation of the invalid sale after the comptroller's deed has been executed, and declares it to be the duty of the comptroller *upon receiving evidence* that the sale was invalid, to cancel it and refund the purchase-money.   It cannot be conceived that the legislature intended to draw a distinction between the two cases, and to provide that where a deed had been executed the comptroller should receive evidence, and that where no deed had been executed he was not empowered to receive evidence of the invalidity of the sale.   Taking the two sections together it seems plain that it was intended that in both cases the comptroller should receive evidence, and

that it was implied that the purchaser, who was the party interested, should have the right to offer such evidence.

The act of 1873, (Chap. 120) referred to in the opinion of Peckham, J., at Special Term, is confirmatory of this view. That act provides for setting aside cancellations whenever they have been obtained by fraud, misrepresentation or suppression of any material fact, or by a mistake of fact.

This statute is entirely inconsistent with the theory that the comptroller was limited in his power of cancellation to defects appearing on the face of the proceedings, and could not consider extrinsic facts. The comptroller objects that the affidavits produced to him, and the testimony of witnesses offered on the part of the relators, were not evidence in a technical sense, because he was not vested with judicial powers and functions, and such affidavits and testimony would not expose the witnesses to the penalties accompanying the giving of false testimony under legal oaths before a duly qualified tribunal. This is one of the grounds upon which he bases his refusal to consider or act upon the proofs offered.

We think the comptroller had legal authority to receive and act upon the proofs offered, and that they did constitute legal evidence. He was clearly authorized to decide the question of the validity or invalidity of the tax sales, at least as between the State and the purchaser, and for the purpose of determining whether the purchaser was entitled to have the purchase-money paid by him refunded out of the State treasury. This was in the nature of a judicial function conferred upon him by law. It is a general principle that where a power is given by statute, everything necessary to make it effectual, or requisite to attain its end, is implied. (1 Kent's Com., 464; *Stief* v. *Hart*, 1 N. Y. 20, 30; *Mayor* v. *Sands*,*.) To enable him to decide whether or not the tax sales were invalid, for any cause whatever, and ineffectual to give title, it was necessary that he should receive evidence of the facts showing their invalidity. The power to cancel, therefore, implies power to take proof of the defect. Indeed, in section 85, it is in terms made the

---

*Ante,* p. 210.

duty of the comptroller to receive evidence that the sales were invalid and to act upon such evidence. That section says that " *it shall be the duty of the comptroller, on receiving evidence thereof, to cancel the sale,*" etc. If witnesses should be produced before him he is expressly authorized by law to swear them (1 R. S. 185, § 1), and all the power required to enable him to conduct the investigation is conferred upon him by section 843 of the Code of Civil Procedure, which provides, among other things, that : " Where an *officer*, person, board or committee, to whom or to which application is made to do an act in an official capacity, requires information or proof, *to enable him or it to decide upon the propriety of doing the act*, he or it may receive an affidavit for that purpose," and the same section provides that whenever an officer, etc., is authorized to receive an affidavit, he may swear the deponent.

The comptroller was thus vested, at the time the application was made to him by the relators, with legal authority, not only to receive the affidavits tendered, but also to administer oaths to the witnesses who might be produced before him, and section 96 of the Penal Code is broad enough in its provisions to subject a witness or deponent to the pains and penalties of perjury, for swearing falsely on such a hearing or inquiry by the comptroller.

The learned attorney general in support of the comptroller's appeal, takes the further point that the statute was intended to provide only for cases where the invalidity results from some defect in the proceeding of the comptroller himself, in respect to the sale. We can find nothing in the statute to support this theory. The provision is that if, *for any cause whatever*, the *sale* should be discovered to have been *invalid*, or *ineffectual to give title*, the purchase-money shall be returned and the sale canceled. If the tax itself, which was the foundation of the power, is found to have been void, the sale, however regularly conducted, is ineffectual to give title to the land sold. The failure of title is the essential ground upon which restitution is to be made. The argument that the only invalidity which the comptroller can

consider, is a defect in his own proceedings, is conclusively answered by section 84 of the same act, which provides that if the error originated *with the town or county officers,* the amount refunded shall be charged to the county and reassessed by the board of supervisors and paid to the State treasurer.

Some criticism is made upon the language of section 83, viz., that if the comptroller shall *discover* that the sale was invalid, etc., he shall cancel it, etc. The statute could not have been intended to be confined to cases where the comp-troller by his own unaided researches, and without suggestion from any one else, makes the discovery. We think that the meaning was that where he shall find, or it shall be made apparent to him, that the defect exists, he shall act, and where the purchaser satisfies him by evidence that he can get no title under the sale, we think that it is his duty to discover it and to cause the purchase-money to be refunded. Section 85 expressly provides that "on receiving evidence" of the invalidity he shall act.

We are also of opinion that *mandamus* is the proper remedy to set the comptroller in motion when he refuses to entertain or act upon an application of this description. It is not claimed that he can be directed by that court how to decide the question, but only to receive the evidence and exercise his judgment upon it. Being vested by the statute with power to decide, and the purchaser, whose money is in the State treasury, having a legal interest in having his right to a return of it determined, is entitled to apply for a *mandamus* to compel the exercise of the power. Besides the statute is in terms mandatory, and declares that on discovery of the defect the comptroller *shall cancel* the sale and cause the purchase-money to be. *forthwith* refunded.

The relators presented to the comptroller *prima facie* evidence, which, if true, showed that the taxes and the sales were invalid and that they were entitled to be refunded the purchase-money. (*Bellinger* v. *Gray,* 51 N. Y. 610, 617; *People* v. *Hagadorn,* 104 N. Y. 516; 36 Hun, 610.) And they

offered to produce further satisfactory evidence of the facts alleged.   We think it was the duty of the comptroller to hear and decide the case, and that the *mandamus* was properly granted.

The order should be affirmed.

All concur.

Order affirmed.