The People ex rel. The Hamilton Park Company, Appellant, *v.* Edward Wemple, as late Comptroller, etc., et al., Respondents.

Neither under the act of 1855 (Chap. 427, Laws of 1855), in relation to the collection of taxes on lands of non-residents, nor under the amendatory acts of 1885 (Chap. 448, Laws of 1885) and 1891 (Chap. 217, Laws of 1891), is any jurisdiction given to the comptroller of the state to entertain and act upon an application of the owner of land sold for taxes for a cancellation of the tax sale.

The amendment of the act (§ 2) in 1891, requiring the comptroller to hear and determine all applications for cancellation made "by any person interested in the event thereof," did not change the prior rule; it refers simply to persons interested in the refunding of moneys paid on a purchase upon a tax sale.

*People* v. *Turner* (117 N. Y. 227), distinguished and limited.

*People ex rel. Hamilton Park Co.* v. *Wemple* (67 Hun, 495), reversed.

(Argued June 20, 1893; decided October 3, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 15, 1893, which confirmed an order and determination of Edward Wemple, as comptroller.

This proceeding was instituted by writ of certiorari, brought for the purpose of reviewing the decision of Edward Wemple, late comptroller of the state of New York, made December 30, 1891, canceling three several tax sales made by the state in the years 1877, 1881 and 1885, of lands in the town of Long Lake, Hamilton county, for taxes. The sale of 1877 was for taxes assessed in the years 1867 to 1870 inclusive. The sale of 1881 was for taxes assessed in the years 1871 to 1876 inclusive, and the sale of 1885 for taxes assessed in the years 1877 to 1882 inclusive. The comptroller, on the 29th day of January, 1884, executed to the purchasers on the tax sales of 1877 and 1881, conveyances of the lands sold, which were recorded December 10, 1888, and made a similar conveyance April 9, 1889, of the lands sold at the tax sale of 1885, which was recorded December 22, 1889.

The relator, the Hamilton Park Company, is the grantee

of the purchasers at the three tax sales mentioned, by deed dated May 1, 1889.

On the 9th day of December, 1885, the Adirondack Railway Company, a railroad corporation organized July 7, 1882, presented its petition, duly verified, to the comptroller for the cancellation of the three tax sales of 1877, 1881 and 1885, of two parcels of land aggregating 3,000 acres, in township 36, in Totten and Crossfield's purchase, in the town of Long Lake, on the ground that it was the owner of the land as successor of the Adirondack Company, a railroad corporation organized under chapter 236 of the Laws of 1863, and that the lands were, by virtue of that act and subsequent amendatory acts, exempt from taxation during the years 1867 to 1882 inclusive. This application was denied by the comptroller June 23, 1888, on the ground that the owner of the lands sold for taxes was not authorized under the statute to apply to the comptroller for the cancellation of tax sales, and that the purchaser was the only party entitled to make such application.

Subsequently, on the 19th day of November, 1891, the Adirondack Railway Company, on a new verified petition, applied to the comptroller for a re-hearing and re-consideration of its previous application, setting forth as in the first petition the grounds upon which application for cancellation was made, which were in substance the same as were stated in the petition of Dec. 9, 1885. Other parties claiming as owners or mortgagees of lands affected by the tax sales were allowed to intervene. A hearing was had before the comptroller of the application of Nov. 17, 1891, at which the petitioners and the relator were present. The petitioner in support of its application for cancellation, introduced papers purporting to be an abstract of title, showing the ownership of the lands by the Adirondack Company during the years in which the taxes were assessed, accompanied by written statements as to the performance of the conditions of exemption imposed by the act of 1863, and subsequent amendatory acts. Affidavits were also introduced tending to show that the taxes on the lands and for which they were sold were not extended by the board

of supervisors of Hamilton county when the tax rolls were delivered by the board to the supervisor of the town, and that the board never acted upon any extension or had any cognizance of the rolls after they were delivered to the supervisor.

On the 30th day of Dec., 1891, the comptroller made his decision in writing, granting the application for cancellation on the grounds (1) that the lands were exempt from taxation under chap. 236 of the Laws of 1863, and amendatory and subsequent acts; (2) that the taxes were void by reason of the non-extension of the taxes by the board of supervisors on the tax rolls. The return shows that the relator appeared on the hearing before the comptroller and opposed both the applications of 1885 and 1889, and by counsel submitted briefs in opposition. The relator gave no evidence on the hearing, nor does it appear that it interposed any objection to the evidence offered by the petitioners as to its form or otherwise.

The certiorari is taken by the relator to review the decision of the comptroller canceling the tax sales. The decision recites that it was made "in accordance with the requirements of chap. 217, Laws of 1891."

Further facts are stated in the opinion.

*Esek Cowen* and *Charles J. Hardy* for appellant. The applicants in this case had no legal right to call upon the comptroller to hear and determine their application; and the action of the comptroller, in canceling the relator's title, against its opposition, was unwarranted by law, and should be reversed. (*People ex rel.* v. *Chapin*, 104 N. Y. 369; *People ex rel.* v. *Chapin*, 105 id. 309; *Ostrander* v. *Darling*, 127 id. 70; Laws of 1885, chap. 448; Laws of 1891, chap. 217.) Assuming that the comptroller had a right to hear and determine this application, then this proceeding brings before this court the question of the sufficiency of the evidence laid before the comptroller, and contained in his return to justify the cancellation of the tax sales of 1877, 1881 and 1885. (*People* v. *B. of Police*, 39 N. Y. 506; *People* v. *W. R. R. Co.* 40 id. 154; *People* v. *Hillhouse*, 1 Lans. 87; *People*

v. *Eddy*, 57 Barb. 593.) There is nothing in this return in the shape of legal evidence to justify the comptroller in canceling the several tax sales of 1877, 1881 and 1885. His action was totally unwarranted by the proofs, and should be reversed. (*Hadley* v. *Greene*, 15 Barb. 601; *Baker* v. *Kingsland*, 10 Paige, 366; *Lansing* v. *Russell*, 3 Barb. Ch. 325; *Porter* v. *Waring*, 69 N. Y. 255; Laws of 1863, chap. 336, § 2.) This proceeding was clearly barred. (Laws of 1885, chap. 448; Laws of 1891, chap. 217.) The assessors had general jurisdiction to assess all lands within their assessment district. These lands were, therefore, *prima facie* taxable, and in the absence of any claim of ownership, or any claim for exemption, upon the part of the Adirondack Company, it would seem that they must have acted not only within their jurisdiction, but according to their plain duty. (*Barhyte* v. *Shepherd*, 35 N. Y. 280; *Hilton* v. *Fonda*, 86 id. 339; *McLean* v. *Jephson*, 123 id. 142.)

*Arthur L. Andrews* for respondents. The comptroller was authorized to hear and determine the applications made by the Adirondack Railway Company. (Laws of 1855, chap. 427.) The comptroller was compelled by the provisions of chapter 217, Laws of 1891, to hear and determine this application upon the merits. (*People* v. *Turner*, 117 N. Y. 227.) The comptroller had the power and it was his duty to hear and determine the application made by the company in November, 1891, as a new and original application, and also the applications made by Marsh and Hall as mortgagees, and Marsh as the owner of an undivided interest. (Laws of 1891, chap. 217; Code Civ. Pro., §§ 1344, 1355; *Fitch* v. *Bates*, 11 Barb. 471.) The tax sales of 1877, 1881 and 1885 were illegal and void and conferred no title upon the purchasers, because the lands were owned by the Adirondack Company, and were, therefore, exempt from taxation. (Laws of 1863, chap. 263; Code Civ. Pro., §§ 2139, 3343; *People ex rel.* v. *Chapin*, 105 N. Y. 369; *P. R. R. Co.* v. *Simpson*, 23 Hun, 43; *Dunham* v. *Townshend*, 118 N. Y. 281; *Munoz* v.

**244**  People ex rel. H. P. Co. *v.* Wemple et al.   [Oct.,

Opinion of the Court, per Andrews, Ch. J.   [Vol. 139.

*Wilson*, 111 id. 295; *Dunford* v. *Weaver*, 84 id. 445; *Still-well* v. *Carpenter*, 62 id. 639; *Shattuck* v. *Bascom*, 105 id. 39.) The sales were also void by reason of the fact that the board of supervisors of Hamilton county did not extend the taxes in the assessment rolls of the town of Long Lake for any of the years from 1867 to 1883. (*People* v. *Hagadorn*, 104 N. Y. 576; *People ex rel.* v. *Chapin*, 105 id. 309; *Bellinger* v. *Gray*, 51 id. 610.) The sales were not legalized by chapter 448 of the Laws of 1885. (*Ensign* v. *Barse*, 107 N. Y. 329; *Terrell* v. *Wheeler*, 123 id. 76; *Cromwell* v. *McLean*, Id. 476; *Joselyn* v. *Rockwell*, 128 id. 334; *Bank of Chemung* v. *Elmira*, 53 id. 49; Const. N. Y. art. 3, § 20.)

Andrews, Ch. J. The point urged by the relator, that the owner of land sold for taxes is not entitled under the statute to apply to the comptroller for the cancellation of a tax sale, and that the comptroller has no jurisdiction to entertain and act upon an application by the owner for such cancellation, is, if well taken, decisive of the case and requires a reversal of the proceedings.

The decision of the comptroller now under review, which canceled tax sales of 1871, 1881 and 1885, of lands in Hamilton county, was rendered on the application of the Adirondack Railway Company, made Nov. 17, 1891, as owners of the lands, by grant from the Adirondack Company. The application was made on the ground that the lands in question were, during the years in which the taxes were assessed, upon which the lands were sold, exempt from taxation under chap. 236 of the Laws of 1863, and subsequent statutes. The comptroller entertained the petition of the Adirondack Railway Company, and against the protest and objection of the relator, the Hamilton Park Company, the grantee of the purchasers on the tax sales, rendered his decision Dec. 30, 1891, canceling the several sales in the years mentioned on the ground stated in the petition and on the additional ground embraced in the general clauses of the petition, that the board of supervisors of Hamilton

1893.] People ex rel. H. P. Co. v. Wemple et al.   245

N. Y. Rep.]   Opinion of the Court, per Andrews, Ch. J.

county had omitted to extend on the tax rolls of the town of Long Lake the taxes for which the several tax sales were made, before delivering the rolls to the supervisor of the town.

The action of the comptroller was taken, therefore, upon the application of the owner of the lands at the time of the several tax sales, or his grantees, and the right of the owner of lands sold for taxes to institute the proceedings for cancellation, and of the comptroller to adjudicate on his application the respective rights of the owner and of a purchaser on a tax sale, is distinctly presented and must be determined.

The question is not wholly new in this court. In the case of *People ex rel. Wright* v. *Chapin* (104 N. Y. 369), the question was presented and was elaborately considered by the court, whether the owner of lands sold for taxes was entitled, under chap. 427 of the Laws of 1855, to the remedy provided by that act for the cancellation of tax sales on application to the comptroller. The act of 1855 consolidated the previous legislation on the subject of tax sales, and regulated the proceedings on the sale by the state of lands for unpaid taxes, and by the 83d and 85th sections power was conferred on the comptroller to cancel invalid tax sales, and upon such cancellation he was required to refund to the purchaser, out of the state treasury, the purchase money and interest thereon. It is unnecessary to quote the sections here. They are quoted in the opinion in the case cited. The court on the first argument, and afterwards on a motion for re-argument, unanimously decided that the intent of sections 83 and 85 was to relieve a purchaser who had purchased land at a tax sale, which was invalid, from his purchase, and to provide for a prompt restitution of the money paid by the purchaser. It was, therefore, held that the owner of land who had applied to the comptroller for the cancellation of a sale of his land for taxes, and where application had been denied, could not maintain an appeal from the decision of the comptroller. Danforth, J., in his opinion, after referring to sections 83 and 85 of the Laws of 1855, said: "The evident object of these pro-

.visions was to enable the state to relieve the purchaser from the consequences of a defective tax title, and at the same time replenish the treasury by a speedy collection of the tax with-held from it. The owner is not a party to the proceeding, nor is he permitted in this way to test the validity of the sale or tax. In such a controversy the purchaser would have an interest and a right to the protection of the court by the usual course of legal proceedings. The statute contains no inti-mation of a legislative purpose to deprive him of this right. It gives no process to bring him in, confers no power to com-pel witnesses. In short, it creates no court, provides for a single transaction, to which the comptroller and the purchaser are the only parties." In reviewing the grounds of this decision we are fully satisfied that it accords with a sound construction of the act of 1855. If the statute was intended to make the comptroller a tribunal to decide controversies between the owner and the purchaser as to the validity of a tax title, it is singularly deficient in provisions for securing the due consideration and hearing of the controversy, and in pro-viding the safeguards which ordinarily surround and attend judicial investigations affecting questions of title to land, arising between conflicting claimants. The validity of a tax title is frequently a question of great difficulty, involv-ing important and valuable interests, not only of the owner whose title is claimed to have been divested, but of a purchaser, who, in reliance upon the validity of his title, may have made valuable improvements on the property. The comptroller may be a person not familiar with legal ques-tions or investigations. The act of 1855, as Judge DANFORTH points out, makes no provision for bringing the claimants before the comptroller, provides for no notice to the adverse party, prescribes no rules for the examination and cross-examination of witnesses, and, as we held in *People ex rel.* *Ostrander* v. *Chapin* (105 N. Y. 309), the comptroller may accept affidavits in place of common-law proof of any facts relevant to the application. There is no provision for an appeal from the comptroller's decision, and if his decision

1893.] People ex rel. H. P. Co. v. Wemple et al. 247

N. Y. Rep.] Opinion of the Court, per Andrews, Ch. J.

might, prior to the amendment of 1891, have been reviewed on certiorari, it would be subject to the rules governing a review under that act. It is difficult to suppose that the act of 1855 intended to constitute the comptroller a court to decide controversies between the owner of lands sold for taxes and the purchaser as to the validity of a tax title.

On the other hand, if the provisions in the act of 1855, as to cancellation of tax sales, were intended merely to afford a remedy to the purchaser to recover back the money paid on an invalid sale, the act established a consistent system, easily understood and productive of no injustice. The purchaser by his application consents to a cancellation of the tax. The state by its officers considers and passes upon the application, and is the only party, other than the purchaser, interested. The owner of the land cannot complain if the sale is vacated, and if the application is denied his position is not changed. The county which may be required to re-levy the amount refunded, is one of the municipal divisions of the state, and is represented in the transaction by the state officers. If the comptroller acts under section 83 on his own motion, and vacates the sale before the conveyance is made, the purchaser gets back his money, and he cannot complain because he purchased subject to the right of the comptroller to exercise this power.

The construction of the act of 1855, established by the decision in *People ex rel. Wright* v. *Chapin (supra)*, was re-asserted in the case of *People ex rel. Ostrander (supra)*, in which Rapallo, J., said : " The intent was to protect the title of the purchaser in case the sale was found to be ineffectual to give him title." In the subsequent case of *People* v. *Turner* (117 N. Y. 227), which was an action to recover penalties for cutting timber on lands in Franklin county, title to which was claimed by the state under a tax sale made in 1877, the defendant, without connecting himself with title to the land in any way, sought to defeat the action on the ground that the plaintiff's title was defective for the reason that the assessors, in assessing the taxes on which the land was sold, had omitted to give

notice of a review of the assessments, as required by law. The court, in its opinion, after giving several conclusive reasons in answer to this defense, assigned as an additional reason that the owner whose lands were assessed had a remedy under the act of 1855, to apply to the comptroller for the cancellation of the tax. No reference was made to the decision in 104 N. Y., and the suggested construction of the act of 1855, in hostility to that decision, was a mere inadvertence. Unless, therefore, the right of an owner, whose lands have been sold for taxes, to apply to the comptroller of the state has been given by some statute subsequent to 1855, no such right exists.

The comptroller, as authority for exercising this jurisdiction, relied upon chap. 217 of the Laws of 1891, which amended section 2 of chap. 448 of the Laws of 1885, which itself was an amendment of the law of 1855. The act of 1885 enacted a rule of evidence by making certificates of tax sales and a conveyance thereunder in certain cases, and after a certain time, conclusive evidence of the validity of the sale and of the prior proceedings, whereas, by the act of 1855, a conveyance by the comptroller was made presumptive evidence only. In the opinion in *People ex rel. Wright* v. *Chapin (supra)*, given on the motion for re-argument, the judge delivering the opinion, referring to the statute of 1885, stated, in substance, that it did not extend the power of the comptroller in respect to cancellation beyond that given by the act of 1855. Section 1 of the act of 1885 amends section 65 of the act of 1855, the main purpose of the amendment being, as has been stated, to create a conclusive presumption of regularity in the cases mentioned. It confers no new power upon the comptroller in express language. The section is very obscure, and it may afford ground for an argument that the legislature, by the concluding clause in the section, intended to give the owner a remedy to apply to the comptroller for cancellation where the taxes had been paid before the sale, or where the land taxed was not taxable. On the other hand, the intention may have been not to preclude the purchaser from applying for cancellation in

1893.] People ex rel. H. P. Co. v. Wemple et al. 249

N. Y. Rep.] Opinion of the Court, per Andrews, Ch. J.

these cases, the objections being fundamental, and which, it might be claimed, would not be reached by a curative statute, or by a statute enacting a conclusive rule of evidence in support of the purchaser's title. Section 2 of the statute of 1885 was the one amended by the statute of 1891, and the original section in the act of 1885 contained nothing bearing upon the point we are now considering. The act of 1891 added to the original section this clause, which is the one relied upon to sustain the action of the comptroller in this case: " All applications heretofore or hereafter made to the comptroller for the cancellation of any tax sale by any person interested in the event thereof, shall be heard and determined by him, and his determination shall be subject to review by certiorari or otherwise." It will be observed that there is no express grant of power in this clause to the comptroller to entertain and adjudicate upon the validity of tax sales on the application of the owner of lands affected thereby. The act of 1891 was passed several years after our decision in *People ex rel. Wright* v. *Chapin*, which may be presumed to have been known by the legislature. It is quite significant that if the legislature intended to confer the additional power upon the comptroller to cancel tax sales upon the application of the owner, the intention was not expressed in unequivocal terms. The clause quoted from the act of 1891 contains two new affirmative provisions. It makes it imperative upon the comptroller to hear and determine applications for cancellation, which, prior to our decision in *People ex rel. Ostrander* v. *Chapin*, was regarded by him as discretionary, and next, it gave in express terms a remedy by certiorari to review his decision. The purchaser, if the right of cancellation is still confined as in the act of 1855, gained these advantages and his rights were relieved from the obscurity which before attended them. It is, however, upon the language of the act of 1891, directing the comptroller to hear an application for cancellation " by any person interested in the event thereof," upon which the defendants rely as extending the power of the comptroller so as to embrace application by the owners of the

property sold for taxes, as well as purchasers.    Looking to the policy of the act of 1855, in conferring power on the comptroller to cancel tax sales, which was to encourage bidding and to provide a speedy and summary remedy in favor of purchasers to recover back the purchase money, where the purchaser could acquire no title by reason of the invalidity of the proceedings, the words "interested in the event thereof," in the act of 1891, would most naturally refer to persons interested in the refunding of the money paid, which was the primary object of applications for cancellation under the act of 1855.    The cancellation of the tax sale and the refunding of the money paid thereon were to be simultaneous acts, and an owner whose land had been illegally sold for taxes, although he might have an interest in having the cloud upon his title removed, did not need the remedy by cancellation to preserve his rights, and he was not interested in the refunding to the purchaser of the money paid on the sale, and so not in the event of the application for cancellation in its main purpose.

We are of opinion that the statute of 1891 has not changed the prior rule, and that now, as before, the owner is not entitled to the remedy by cancellation.    The construction of the obscure legislation is not free from difficulty.    If the legislature should deem it wise to extend the scope of the powers of the comptroller to the determination of controversies between the owner and purchaser of land sold for taxes, new and additional legislation should be enacted containing provisions which shall insure a deliberate hearing upon competent evidence, with the usual safeguards which attend ordinary judicial trials.

These views lead to a reversal of the proceeding below, and costs should be awarded to the relator in all courts.

All concur, except Earl and Maynard, JJ., dissenting.

Order and judgment reversed.