The People of the State of New York ex rel. Peter Harris, Respondent, *v.* The Commissioners of the Land Office,. Appellants.

*Tax sale — failure of the title of the State — purchaser to be repaid — power of the Comptroller to pass judicially upon the validity of a tax sale — an erroneous decision does not affect his jurisdiction — Commissioners of the Land Office in ordering repayment do not act judicially — mandamus — res adjudicata.*

Upon the hearing of a motion for a peremptory mandamus to compel the Commissioners of the Land Office to repay to the petitioner moneys paid to the State by his assignor and grantor, Jere W. Finch, upon the latter's purchase from the State of lands which had been theretofore sold for State taxes and bid in upon the sale therefor by the Comptroller, it appeared that the lands were sold for

taxes in 1871, 1877 and 1881, and that Finch purchased from the State in 1882, receiving a certificate of sale but no deed or patent. The petitioner alleged that he discovered that the tax sales were void, that he duly made application to the Comptroller under chapter 448 of the Laws of 1885, to have the sales canceled, and that the Comptroller on March 29, 1892, after investigation and examination, duly canceled the sales. These allegations were not denied by the Commissioners of the Land Office, who stated, however, that the title of the State had not failed, and that the Comptroller erred in his decision.

*Held*, that the petitioner was entitled to be repaid the purchase money and interest, pursuant to the provisions of 1 Revised Statutes, chapter 9, title 5, article 1, section 6 (m. p. 198);

That the Comptroller had power under sections 83 and 85 of chapter 427 of the Laws of 1855 to pass upon the validity of a tax sale, and that his power in this respect was in the nature of a judicial function;

That these sections were not repealed by chapter 448 of the Laws of 1885, amending section 65 of the act of 1855;

That the object of such amendment was simply to provide a rule of evidence when the validity of a tax sale was called in question;

That if the certificate issued to Finch, having remained in force for over two years after the last day allowed by law to redeem from a tax sale before the act of 1885 was passed, and having remained in force for six months after the passage of that act before the Comptroller canceled the sales, thereupon became, by the terms of the act, conclusive evidence of the regularity of the sales, but was not so considered by the Comptroller in his decision, this fact did not oust the Comptroller of jurisdiction, but merely showed that he had made a mistake in deciding a matter which was legally and properly before him for decision;

That such an error could only have the effect of rendering his decision liable to reversal upon its review by certiorari;

That the Commissioners of the Land Office, in passing upon the application of the petitioner, did not act judicially, and that his remedy was by mandamus and not by certiorari;

That as the petitioner had once obtained a decision of the Comptroller, an officer having jurisdiction in the premises, that the tax sales in question were invalid, he could not be compelled again to submit the matter to another tribunal for adjudication.

APPEAL by the defendants, The Commissioners of the Land Office, from an order of the Supreme Court, made at the Schoharie Special Term and entered in the office of the clerk of the county of Albany on the 22d day of April, 1895, directing that a peremptory writ of mandamus issue.

*Z. S. Westbrook*, for the respondent.

*T. E. Hancock*, Attorney-General, and *W. E. Kisselburgh, Jr.*, Deputy Attorney-General, for the appellants.

Putnam, J.:

This is an appeal from an order directing a peremptory mandamus to issue to the Commissioners of the Land Office commanding them to direct that $6,300, the purchase money paid on or before February 2, 1882, by one Jere W. Finch, assignor and grantor of the applicant, Peter Harris, for certain lands sold by the State to said Finch, be repaid to said Peter Harris out of the treasury of the State with interest.

The State acquired title to the lands in question through various tax sales, and said premises were sold on behalf of the State to Finch for $6,300 on the 1st day of February, 1882; on the 2d day of February, 1882, Finch paid to the Treasurer of the State $6,300, the purchase price aforesaid; no patent or deed was ever issued to Finch, but the Comptroller's certificate of sale was assigned to him; on the 15th day of December, 1884, said premises were transferred by Finch to the applicant, Harris. Thereafter, about the 29th day of March, 1892, the said tax sales through and by which the State obtained title were, by order of the Comptroller, canceled and set aside. In June, 1892, said Peter Harris presented to the Commissioners of the Land Office an application that the purchase price paid by said Finch for the premises be refunded to him on the ground of the failure of the State's title. On the 27th day of December, 1892, said application was denied.

In the petition for a mandamus the applicant stated in reference to the tax sales under which the State conveyed the premises in question to Finch, his assignor and grantor, as follows: "That the said applicant herein, Peter Harris, discovering and claiming that the said State tax sales, and each of them, and the taxes for which said sales of said lands were made in 1871, 1877 and 1881 were wholly illegal and void, and that no title had ever passed to the People of said State, or been given, granted or passed, by reason thereof, or either of said tax sales, *duly* made application to the Comptroller of said State under and pursuant to the provisions of chapter 448 of the Laws of 1885 of said State, and as provided and authorized thereby, and by law, to cancel, annul and set aside the said tax sales of 1871, 1877 and 1881, and each of them and all the title which the People of said State had acquired to said land thereby, and each of the taxes for which each of said sales had been made

upon the grounds provided and authorized by law, because the said sales and each of them, and the said taxes and each of them, for which the said sales had been made, were wholly illegal and void. And the said Comptroller, upon the said application of your applicant, the said Peter Harris, and the proof presented to said Comptroller thereon and therewith, and after due examination and investigation, did, on the 29th day of March, 1892, by proper order, decision and determination, *duly* cancel, annul and set aside as wholly illegal, null and void the said tax sales of 1871, 1877 and 1881, and the conveyances and certificates therefor and of said sales, and each of them, and all the right, title and interest which the People of the State of New York had, and ever had or acquired therein, or in or to said lands."

His statement is corroborated by the affidavit of his attorney, Z. S. Westbrook.

The appellants read on the hearing below an affidavit of a deputy attorney-general of the State which states: " That he has been informed from an examination of the records in the State Comptroller's office, and believes that the tax sales which were canceled, as shown by the petition of said Peter Harris in the above-entitled matter, were canceled by the Comptroller of the State of New York upon the following grounds : *First.* That the taxes were not carried out on the assessment rolls by the supervisors. *Second.* That the amounts of highway taxes on the assessment rolls were not properly designated, being designated in many instances by abbreviations, such as H. and Hy. *Third.* That the affidavit attached to the collector's return of unpaid taxes had no venue. *Fourth.* That the return of unpaid taxes to the Comptroller's office described the lands in the river section, whereas they were in the general allotment." The affidavit does not controvert the statement contained in the petition that Harris *duly* made application to the Comptroller to cancel the tax sales in question, or that proof was presented to that officer, and that after hearing the same and considering it he duly directed that the sales be canceled. What proofs were offered or what the contents of the petition or papers presented to the Comptroller were, does not appear, the affidavit merely stating that the affiant is informed from an examination of the records of the State Comptroller's office, and believes, that said tax sales were canceled for the reasons in the affidavit specified.

The statute authorizes the Commissioners of the Land Office to direct repayment of the purchase money received by the State on account of land granted by it when the title thereto shall fail, as follows: " Whenever the title of the People of this State to lands granted under its authority shall fail, and a legal claim for compensation on account of such failure shall be preferred by any person entitled thereto, it shall be the duty of the commissioners to direct the payment of the original purchase monies which may have been paid to the State by such person, with interest at the rate of six per cent. from the time of such payment, to be paid out of the treasury on the warrant of the Comptroller." (1 R. S. 198, § 1.)

It is urged by the learned counsel for appellants that the title of the State had not failed, and that the Comptroller, in assuming to decide to the contrary, acted without jurisdiction and that his determination was void; that at the time of the passage of chapter 448 of the Laws of 1885 the certificate of sale from the State under which applicant was in possession of the lands in question had been outstanding over two years and was outstanding at the time of the cancellation and that over six months since the passage of the act of 1885 had then elapsed; that the grounds of the cancellation were not jurisdictional defects in the proceedings, but mere irregularities which were cured by the statute of 1885.

The above-quoted provision of the statute (1 R. S. [8th ed.] 618), while providing that when the title of the State to land granted under its authority shall fail it shall be the duty of the commissioners to direct the repayment of the purchase money paid to the State therefor, conferred no power upon the commissioners to determine the fact as to the State's failure of title; the act is silent in that regard. But sections 83, 85 of chapter 427, Laws of 1855, confer upon the Comptroller of the State power to pass upon the question of the validity of a tax sale of lands. It has been held that the power of the Comptroller under this act is in the nature of a judicial function. (*People ex rel. Ostrander* v. *Chapin*, 105 N. Y. 309.)

Sections 83, 85, chapter 427, Laws of 1855, were not repealed by chapter 448, Laws of 1885, either directly or by implication. The act of 1885 is merely an amendment of section 65 of the act of 1855. The amendment provides a rule of evidence for the Comp-

troller and for courts when the validity of a tax sale is called in question, leaving the balance of the act of 1855 in full force. (See *People ex rel. Hamilton Park Co.* v. *Wemple*, 139 N. Y. 240, 248.)

By the presentation of the application of Peter Harris to the Comptroller that officer, under the statute, acquired jurisdiction to pass upon the question of the validity of the tax sales referred to. The petition for the mandamus states that Harris *duly* made application to the Comptroller under and in pursuance of the provisions of chapter 448, Laws of 1885, and as authorized thereby and by law, to cancel said tax sales, and the Comptroller upon said application and the papers presented therewith did by proper order and decision duly cancel, annul and set aside said sales as wholly illegal and void. This was a sufficient averment of the proper presentation of the application to the Comptroller by Harris and of the judgment or decision rendered thereon by that officer. (Code Civ. Proc. §§ 532, 2080; *Brownell* v. *Town of Greenwich*, 114 N. Y. 518; *Cutting* v. *Massa*, 15 N. Y. St. Repr. 316.)

There was no general denial interposed to the allegations stated in the petition. It was not denied that Harris *duly* presented his application to the Comptroller to have said tax sales canceled, or that the Comptroller duly rendered his decision on such application, except such denial as is contained in the affidavit read on the part of the appellants, which merely states the ground on which the Comptroller rendered his decision. But the affidavit contained no allegation showing or tending to show that the matter was not regularly and properly brought before the Comptroller for his decision.

The applicant, therefore, claiming that the tax sales in question were wholly void, applied to the Comptroller under the statute to cancel them and offered proof before that officer, who, after hearing the proofs, did determine that the sales were void.

As we have seen, his action in passing on the question submitted to him was judicial. On the presentation of the application of Harris he could have been compelled by mandamus to pass upon the merits thereof. (*People ex rel. Ostrander* v. *Chapin et al., supra.*)

We think, therefore, that the Comptroller had jurisdiction to determine the question submitted to him by the applicant, and that his judgment, unless reversed, cannot be called in question in this proceeding.

It is suggested by the appellants that in fact, under chapter 448, Laws of 1885, the title of the State to the lands in question had not failed; that the certificate of sale under which Harris held the lands had remained in force over two years after the last day allowed by law to redeem from such sale when the act of 1885 was passed, and had remained in force over six months after the passage of the act before the Comptroller assumed to cancel the sales, and these facts, under the act, afforded conclusive evidence of the regularity of the sales.

If we assume that this position is correct it merely follows that the Comptroller decided the matter submitted to him erroneously, but it does not follow that he acted without jurisdiction. If Harris had made no application to cancel the tax sales, and had obtained a patent from the State and afterwards commenced an action to eject some person from his land, claiming that by the lapse of time after the passage of the act of 1885 his tax title had become valid and the court before whom the matter was tried, disregarding the rule of evidence prescribed by the act in question, had held his title invalid such a decision might have been an error for which the judgment could have been reversed. But if such a judgment were not appealed from, its validity could not be called in question in another action. The error of the court would not have divested its jurisdiction. So, in this case, the proceeding of applicant to have the tax sales in question canceled was regularly and properly before the Comptroller. It was the business of that officer, under the statute, to pass upon the application, and in passing upon it he acted judicially. If he erred he did so after the matter was before him for decision and after he acquired jurisdiction. His error could not deprive him of jurisdiction, but would only render his decision liable to be reversed on certiorari. (See *Schaettler* v. *Gardiner*, 47 N. Y. 404; *Allen* v. *Utica, Ithaca & Elmira R. R. Co.*, 15 Hun, 80; *Ham* v. *Silvernail*, 7 id. 33; *Porter* v. *Purdy*, 29 N. Y. 106; *The People ex rel. Case* v. *Collins*, 19 Wend. 56.)

On the application of Harris the duty of the Comptroller was to find out and decide whether the said tax sales were or were not invalid. He had to judicially pass on the question, and had jurisdiction to do so. Had he held the sales valid, he would have acted within his jurisdiction, and so his holding them invalid, however

erroneous his determination may have been, did not divest him of jurisdiction. We, therefore, are of opinion that the decision of the Comptroller canceling the tax sales in question on the application of Harris, was made in a proceeding of which that officer had acquired jurisdiction, and although he may have erred in not being governed by the rules of evidence prescribed by the statute of 1885, and his decision might have been, on that account, reversed on certiorari, he did not lose jurisdiction of the case on account of such error, and his decision is binding upon the appellants.

It is claimed that the Commissioners of the Land Office, in denying the application of Harris, acted judicially. We are not referred to any statutory authority conferring upon the commissioners the power to determine the question of the validity of a tax sale. It is undoubtedly true that if they did act judicially in denying the application of Harris, his proper remedy would be by certiorari and not mandamus; but we think the power of the commissioners, under the provisions of the statute above quoted, is not judicial. The cases cited by the appellants (*People ex rel. Millard* v. *Chapin,* 104 N. Y. 96; and *People ex rel. Equitable Life Ass. Soc.* v. *Chapin,* 103 id. 635) refer to decisions of the Comptroller in cases where authority to act judicially is conferred upon him by statute.

If the position of the appellants is correct, Harris, having submitted his case to the Comptroller, and having obtained the decision of that officer adjudicating the invalidity of the tax sales in question — a valid judicial determination (*People ex rel. Ostrander* v. *Chapin, supra*) — is again compelled to submit the same matter for adjudication to another judicial tribunal. We think the position of the appellants cannot be sustained.

We are of opinion that Harris, as grantee or assignee of Finch, was entitled to repayment of the purchase price paid by Finch to the State for the land in question. (See opinion of ANDREWS, J., in *People ex rel. Ostrander* v. *Chapin, supra.*)

As to the other questions involved, we concur in the views expressed by the court below. (12 Misc. Rep. 223.)

The order should be affirmed, with costs.

HERRICK, J., concurred; MAYHAM, P. J., not sitting.

Order affirmed, with costs and disbursements.