(22 App. Div. 170.)

PEOPLE ex rel. FOREST COMMISSION v. CAMPBELL (two cases).

(Supreme Court, Appellate Division, Third Department. November 10, 1897.)

CERTIORARI—DISCRETION OF COURT—EQUITABLE RELIEF.
.The court, in its discretion, should quash a certiorari to review the unauthorized act of the state comptroller in canceling a tax sale of land to the state, upon payment by the former owner of all taxes for which the land was sold, as in such a proceeding the court is powerless to make the equitable order restoring to the state the title to the land, on condition that it refund such owner the amount he paid into the state treasury.

Separate writs of certiorari by the people, on the relation of the forest commission, to review the action of Frank Campbell, as comptroller, in canceling a tax sale. From orders by the general term quashing the writs, on the ground that plaintiff had no authority to sue them out, an appeal was taken to the court of appeals, which remitted the cases to the appellate division. Quashed.

On December 30, 1891, the comptroller of the state of New York made an order canceling a tax sale of the S. E. ¼ of township 24, great tract 1, Macomb's purchase, had in the year 1877, at which sale the state bid off the premises. Such order was made upon the application of Benton Turner, who claimed to be the owner of the premises, and it was made conditionally "upon payment of all the taxes for which the said lands were so sold and all other taxes that are now a lien upon said land." On the next day, December 31, 1891, Turner paid into the state treasury, as and for such taxes, the sum of $6,705.59, and certain other amounts which then appeared charged against the lands upon the comptroller's books. On April 2, 1892, the forest commission, on behalf of the state, made application to the comptroller to set aside such order of cancellation upon certain grounds then stated. Such application was made under chapter 120 of the Laws of 1873, and was denied by the comptroller, one of the grounds of the denial being that no notice of the application had been given to the parties interested in maintaining the cancellation. On the 12th of April, 1892, the forest

commission made a second application to the comptroller, under said statute, asking that the said order of cancellation be set aside. After hearing had upon such application, Comptroller Campbell denied the application. On April 29, 1892, on the relation of the forest commission, two separate writs of certiorari were allowed by a justice of the supreme court,—one to review the decision of Comptroller Wemple, who had made the order of December 30, 1891, and the first decision of Comptroller Campbell in refusing to vacate it; the second, to review both the order of Comptroller Wemple made December 30, 1891, and the second order of Comptroller Campbell, refusing to vacate the same. Both of these writs were quashed by the general term of the Third department, on the ground that the forest commission had no authority to sue out the same. Such decision having been reversed by the court of appeals, the cases are now remitted to this court to hear and determine the same. A motion was also made by the defendant to quash each of such writs upon the ground that the state has accepted and still retains the taxes the payment of which was made a condition for granting the order of cancellation.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Theodore E. Hancock, Atty. Gen., by William P. Cantwell, for relator.

Weeds, Smith & Conway, for respondent.

PARKER, P. J.    It is well settled that the comptroller has no jurisdiction to entertain an application, on the part of the owner of lands sold for taxes, to cancel such sale on the ground of its illegality. There is no statute which has constituted him a court to decide controversies between the owner of lands so sold and the purchaser, as to the validity of the tax title.    People v. Wemple, 139 N. Y. 240, 245, 247, 34 N. E. 883; People v. Roberts, 144 N. Y. 234, 39 N. E. 85.    And this is so even though the state was the purchaser and holds the title when such an application is made.    People v. Roberts, 151 N. Y. 540, 45 N. E. 941.    And, when the comptroller assumes to cancel such a sale on the application of the owner, his proceedings may be reviewed by certiorari (People v. Wemple, above cited); and such review may be had upon the application of the forest commission (People v. Campbell, 152 N. Y. 51, 46 N. E. 176).

It is clear, therefore,—without considering whether Turner, who made this application, was or was not the owner of the lands in question, or whether the sale was or was not a valid one,—that the order of Comptroller Wemple vacating and annulling the tax sale of 1877, and the deed to the state subsequently executed by reason thereof, and all proceedings upon which such order was based, were utterly without authority; and we must make an order in this proceeding, wholly annulling the same, unless we conclude that, under the circumstances of this case, a writ of certiorari to review such proceedings should not be entertained.    When this case was before the general term of the Third department, the writ was quashed upon the sole ground that the forest commission had no such interest in the matter as authorized it to sue out the writ.    82 Hun, 338, 31 N. Y. Supp. 499.    That decision was reversed by the court of appeals; but in its decision such court deals only with the question above stated, and, the case having been sent back to us, we are required to consider all questions presented by either party other than the one so decided.    The defendant now asks this court to again quash this writ, on the ground that the

conduct of the relator has been such that it is not entitled to the benefits which would accrue to it should the decision of the comptroller be reversed in this proceeding. The situation is as follows: Comptroller Wemple, on the application of said Turner, who claimed to be the owner of the lands in question, on December 30, 1891, made an order canceling and annulling the sale under which such lands were sold for taxes, and also canceling and annulling the deed to the state and the title which the state claimed to have acquired as purchaser at such sale. Such order was upon condition that said Turner pay to the state "all the taxes for which the said lands were so sold, and all other taxes that were then a lien upon such lands." On the 31st day of December, 1891, Turner paid to the treasurer of the state more than $6,705.59 as and for such taxes, and the amount so received has been ever since retained to the use of the state. The defendant, on behalf of Turner, now invokes the familiar rule that one who has taken to himself the benefits which a judgment awards him will not be allowed to question it by an appeal. Bennett v. Van Syckel, 18 N. Y. 481; Alexander v. Alexander, 104 N. Y. 643, 10 N. E. 37; Carll v. Oakley, 97 N. Y. 633. To this the relator replies that the payment by Turner was an entirely voluntary one, made for the purpose of obtaining an advantage over the state, and that hence it should have no effect upon the right of the state to reverse the order in question. This reply does not fully meet the objection made. The state is the real party in interest in this proceeding. The forest commission prosecutes for its benefit, and very plainly the amount so paid into its treasury for taxes has been converted to its own use and benefit. Such taxes were not due to the state, if the title to the land which was sold to pay them was to remain in the state. They were paid to and received by the state only upon the theory that the order which this proceeding seeks to vacate had canceled the state's title and restored the land to Turner. The state, therefore, received the taxes only by force of the order it now seeks to reverse. It is probably true that the comptroller was so utterly without authority to make such an order that it had no effect whatever upon the title of the state (Ostrander v. Darling, 127 N. Y. 70, 27 N. E. 353), and Turner was under no obligation to pay the money under it. But upon such payment being made, and its acceptance by the state, the state itself affirmed the validity of the order, and, under the rule above cited, it is in the position of one who, having elected to affirm so much as is beneficial, cannot ask to reverse the part which is burdensome. Knapp v. Brown, 45 N. Y. 207. It cannot reasonably be claimed that this election was not made by the state. The money was received by the proper financial officer, and has by him been applied to the benefit of the state; and the most that can be claimed in aid of the state is that both the treasurer and the comptroller acted without warrant of law, and so exceeded their authority. But it is a familiar rule that a principal who has received the benefit of an unlawful act of an agent cannot avoid the act, and still retain the advantage from it. Krumm v. Beach, 96 N. Y. 398; Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779. And if we should consider this transaction not only as an unauthorized act, but even as a fraudulent scheme, between the state officials and Turner, to deprive the state of its lawful title to the

lands for a price much less than their value, nevertheless the courts would grant a judgment vacating such proceedings only on condition that the state restored to Turner the moneys which he had paid. Lindsley v. Ferguson, 49 N. Y. 623; Gould v. Bank, 86 N. Y. 75–79; Pom. Eq. Jur. § 915. The just and salutary principle that "he who seeks equity must do equity" would, I apprehend, be applied against the state to the same extent that it is applied against the citizen. People v. Stephens, 71 N. Y. 527–549.

If we entertain this proceeding, and annul the manifestly unwarranted order of Comptroller Wemple, our decision will, in effect, amount to a judgment restoring to the state the title to the lands, and yet leaving the defendant's money in its possession,—a result that would be in direct violation of the equitable principle above stated. In proceedings upon certiorari, we can grant no conditional relief. We have authority only to annul, confirm, or modify the determination reviewed (Code Civ. Proc. § 2141); and thus the question is forced upon us whether, under all the circumstances of this case, the writ of certiorari should be allowed.

The writ is a discretionary one, and a proper case for its issuing must be shown. Code, § 2127. In the Encyclopedia of Pleading and Practice (volume 4, pp. 31, 32) it is said: "The writ of certiorari is not a writ of right, but will be granted or denied, in the discretion of the court, according to the circumstances of each particular case, as justice may require;" and such statement is sustained by a long list of decisions there cited. That discretion may be exercised, even though it is apparent that error has been committed in the court below. People v. Mayor, etc., 2 Hill, 9–12; People v. Mayor, etc., 5 Barb. 43. So equitable considerations should largely govern in exercising such discretion (Marblehead v. Essex Co., 5 Gray, 451); and the writ should not be allowed where the equities are against it (People v. Drain Com'r of Wayne Co., 40 Mich. 745). In Inhabitants of Rutland v. County Com'rs of Worcester, 20 Pick. 79, it is said that the writ is in the discretion of the court, and should not be allowed "when, upon the reversal of the proceedings, the parties cannot be placed in statu quo." In view of all these considerations, I am of the opinion that this writ should be quashed, and the state be left to establish and secure its rights in the matter by some proceeding in which the equities of both parties may be considered and protected. The fact that the money directed to be paid by this order has been received into the treasury of the state makes this a case peculiar to itself. I can see that Comptroller Wemple made this order without authority, and in direct opposition to the claim made by the forest commission that he was without jurisdiction to adjudicate between Turner as the owner and the state as the purchaser; and I can also see that the treasurer had no authority to waive any right that the state had to review such order. But, nevertheless, acting for the state, he has received the money, which the state has had the full benefit of and still retains. Such act, in itself, creates a situation that renders the only relief that can be granted under this writ unjust and inequitable. Under such circumstances, it would seem that an action

in equity, where the rights of all parties could be fairly adjudicated, is the more appropriate remedy. The business of the state is managed by departments, each one of which acts only within the scope of authority delegated to it by law. Neither, therefore, is familiar with the situation and details of the other's business. Hence, in this case, it may well have happened that the treasurer, having no knowledge of the invalidity of the order of the comptroller, nor of the claim made by the forest commission concerning these lands, received the money in entire ignorance of the state's claim to them. So the forest commission, while it is its duty to preserve to the state its rights in these lands, has no control over the money received from Turner, nor of any fund from which it could restore the amount so paid by him. Hence arises this peculiar situation: that, by the operation of several independent departments, the state has been put in a situation where it is unable, without doing plain injustice to Turner, to review and reverse by the ordinary process of a certiorari the unwarranted decision of the comptroller, whereby it has been deprived of its title to a large and valuable tract of the forest preserve. Such a situation presents a case where the equitable powers of the court may be invoked, in an action to vacate and annul such decision, upon principles of justice to all parties interested.

The writ of certiorari in each proceeding should be quashed, upon the ground that, in the judgment of this court, under all the circumstances, it would be inequitable to sustain it. No costs should be allowed to either party.